JOSEPHINE GIDLEY ET AL. v. L LOVENBERG, ADMINISTRATOR, ET AL.

Decided March 15, 1904.

**1.—Will—Conveyance in Writing.**

Article 624, Revised Statutes, providing that a conveyance of interest in land from one person to another shall be in writing duly subscribed, applies to deeds and not to wills.

**2.—Description in Will—Intention of Testator.**

It is not held that a bequest may not be void because of a defective description of the thing intended to be conveyed, but where such thing is identified by sufficient description the intention of the testator will be carried out if it can be gathered from the entire instrument, and the broadest liberality in construction is allowed in ascertaining such intention.

**3.—Devise—Building—Houses—Rents Include Property.**

The terms "building" or "houses" include the real estate on which they are situated unless the general meaning of the terms is modified by the language of the context, and an absolute devise of the entire rents of a named property will carry the property also.

**4.—Will—Construction.**

See will construed as passing title to lots and improvements and not merely to rent from the same.

**5.—Will—Charitable Devise—Intention**

Where a will provided for the establishment, by the executors, of a charitable institution, after the death of certain devisees, from rents which were to go to such devisees during their life time, the fact that the devisees outlived the executors and the institution was never established by the executors named in the will for such purpose can not defeat the general purpose of the testator in the establishment of the charity.

**6.—Will—Charitable Devise—Designation of Beneficiaries.**

A will establishing a "widows and orphans home, * * * contributing as far as possible toward ameliorating the condition and comforting the unfortunate of that class," held not subject to the objection that the class named as beneficiaries is too indefinite and includes all widows and orphans regardless of whether they are in need of charity, where the intention of the testator was that such home should be for the care of the poor and needy.

**7.—Charitable Devise—Trustees—Beneficiary.**

A devise of the estate in remainder after the death of devisees for life, for the establishment of a widows and orphans home to be created and incorporated by the trustees for the relief of persons of that class in a certain city, held not void for want of a trustee or beneficiary capable of taking title; the title was in the trustees till the creation of and transfer to the contemplated corporation by them.

Appeal from the District Court of Galveston.   Tried below before Hon. Robt. G. Street.

*Kleberg & Neethe, Mart H. Royston,* and *Moritz O. Kopperl,* for appellant.

*R. V. Davidson, Eugene A. Hawkins,* and *I. Lovenberg, Jr.,* for appellee.

GILL, ASSOCIATE JUSTICE.—On March 2, 1862, Rosanna Osterman, a resident of Galveston County, Texas, made a will which in March, 1866, after her death in that year, was duly probated. By clause 2 of her will her brothers Leon and Isadore Dyer and Franklin H. Merriman were named as independent executors without bond and the "de-

tainers" of her entire estate until the will was fully executed. Clauses 8 and 13 of the will, which are the only parts thereof involved in this litigation, are respectively as follows:

"Item 8. I will and bequeath (in accordance with my late beloved husband's oft-repeated wish) to my loved sister, Hannah, now Mrs. Hannah D. Symonds, wife of Benjamin W. Symonds, residing in the city of Cincinnati, State of Ohio, in her own name, right and title, all the rent of my two brick buildings, situated in the city of Galveston, State of Texas, on lots six and seven (6 and 7), in block six hundred and twenty-two (622), providing the rent does not exceed the sum of four thousand dollars ($4000) per annum, all rent exceeding that amount to be appropriated for the use and benefit of my dear niece, Isabella Dyer, now residing in the city of Galveston, State of Texas, daughter of the late Joseph Dyer, of New Orleans, La., and my dear, faithful friend, Mary Ann Brown, also resident of Galveston city, State of Texas, unless the said Hannah D. Symonds have children, then, and in that case, she is to inherit the entire above named buildings, and her children become the legal heirs of said property after my loved sister Hannah's demise. In the event of said Hannah D. Symond's death, without children, before said Isabella Dyer's and Mary Ann Brown's demise, then and in that case it is my wish (providing said buildings are not destroyed by fire or otherwise) that the rent accruing from said buildings (after paying taxes and all necessary repairs) be equally divided between my niece, Isabella Dyer of Galveston, State of Texas, and my trustworthy friend, Mary Ann Brown, also of Galveston city, State of Texas, during their life, at the death of either, half (or, if both, the entire income) to be safely invested by my executors to create a fund, so that at the death of the owner, or both, the amount already accumulated from the rent, and all the revenue from said property, to be applied for the founding and defraying of expenses for a 'widows and orphans home' to be established with a view of contributing, as far as possible, toward ameliorating the condition and comforting the unfortunate of that class in the city of Galveston, State of Texas. It is my desire that after my executors shall have legally organized and established said contemplated 'widows and orphans home' and appointed proper persons to administer and control the direction of its affairs, then such persons so legally appointed, and their successors in office, conjointly with the mayor of the city of Galveston and his successors in office, shall have the perpetual direction and control thereof—the said 'widows and orphans home' to be organized according to ·law, as a charitable institution for the support of widows and orphans of whatever denomination. For are not all men brothers before God?"

"Item 13. I will and bequeath to my namesake, Rosanna Osterman Maas, daughter of Sam and Isabella Maas, of the city of Galveston, State of Texas, the life interest of fifty shares (50) Galveston city

wharf stock. At and after her death the dividends to be appropriated for the support of indigent (if any there be, if not to any other denominations) Israelites residing in Galveston."

Mrs. Hannah D. Symonds died without issue in 1897. Mary Ann Brown died in 1893 and Mrs. Kopperl died in 1902. The three executors died some time prior to 1888 without organizing or establishing a widows and orphans home and without having undertaken in any way to carry out that feature of the will.

Item 68 of the will is as follows: "And as regards the rest and residue of my estate after all the above legacies and bequests are paid, I appoint and institute my beloved brothers Leon and Isadore Dyer and Benjamin W. Symonds my universal legatees of the rest and residue of my estate movable and immovable."

Leon Dyer and Benjamin W. Symonds (now both dead) conveyed to Isadore Dyer all their interest in the Rosanna Osterman estate. Isadore Dyer, who died in 1888, left a will which contained the following clause:

"In the event the charity contained in item 8 of the last will and testament of Rosanna Osterman, deceased, for the endowment of a 'widows and orphans home' is not established or held by the court to be illegal or inoperative, then as residuary devisee of the said property—Hannah D. Symonds, Isabella Kopperl and Mary Ann Brown being legatees for life in the rents and profits, being demised—then, in and after that event, it is my wish, and I so will, that lots Nos. six and seven (6 and 7), in block No. six hundred and twenty-two (622), in the city of Galveston, with improvements thereon, together with rents, revenues and incomes therefrom, after paying taxes and all other necessary expenses, be applied and set aside for the founding of a 'widows and orphans home' in the city of Galveston; that at least three of the following named gentlemen procure, at the expense of my estate, in their names as trustees, a charter of incorporation under the laws of Texas, to exist for fifty years, and for purposes of benevolence and charity in the city of Galveston, to be named 'The Osterman Widows and Orphans Home Fund;' and I hereby appoint the following gentlemen as said trustees: Bertrand Adoue, Julius Rosenfield, Henry M. Trueheart, W. L. Moody and Leopold Fellman. When said corporation shall have been fully and legally organized in said city, then I direct that my said hereinafter named executors shall convey and turn over said lots Nos. 6 and 7, in block 622, together with the improvements thereon, in the city of Galveston, together with accrued interest, rents and revenues, as well as incomes, to said corporation and its successors as a perpetual fund, the rents, incomes, earnings and products of which to be used for the relief and support of bona fide, permanent residents, worthy widows and orphans of said city, of all religious denominations, who may from time to time permanently reside and live in said city, in the hope that the benevolent and charitably

disposed portion of my fellow citizens will from time to time contribute to the foregoing donation, to the end that all said worthy, destitute widows and orphans in our midst, unable to support themselves, will have their several necessities supplied, to the extent, at least, of relieving their sufferings. And said corporation, by its trustees and other proper officers, use and disburse the net revenues, rents and incomes derived from said named property for the purposes and objects of its organization; and the said trustees shall have the undisputable and uncontrollable power and authority to name, designate and select their successors in office to fill their places as trustees, and they and their successors to select, from time to time, such changes as they may think advisable and proper for such widows and orphans residents of this city as they may deem needy and worthy of this charity, and such widows and orphans so selected and designated, from time to time, and for and during such time as they may be so receiving such charity, shall be held, considered and construed by all persons in all places as the persons entitled to said benefits of this charity for the time being as if their name were respectively set forth in this will as subjects thereof, regardless of their religious belief. At the end of said fifty years, it is my earnest wish and desire that said charter be renewed, or reobtained or regranted in some way, from some lawful power, for the above like purposes and objects, to the end, in some way, that said lots Nos. 6 and 7, in block No. 622, with the improvements thereon, be continued as a charity, and the revenues be appropriated and used for the above class of persons; my will being and I so direct, that said trust shall never cease, abate, diminish, end or be destroyed for want of trustees or persons or powers to administer and carry out the same in its full purposes and objects. Until said corporation is legally formed, my executors and legal representatives shall hold said named property and accrued funds, until said corporation is legally formed, in trust for same."

Joseph Osterman Dyer, Isadore Lovenberg and J. P. Alvey were appointed independent executors of the will of Isadore Dyer, and in pursuance of his will, obtained a charter incorporating the Osterman "Widows and Orphans Home Fund" as a benevolent and charitable undertaking and the corporation was thereafter duly organized.

On November 21, 1888, I. Lovenberg was appointed administrator de bonis non with will annexed of the estate of Rosanna Osterman. Miss Rosanna Osterman Maas, mentioned in clause 13 of the will of Mrs. Osterman, is still living and is now Mrs. Redlich. Josephine Gidley is a niece of Mrs. Rosanna Osterman and one of her heirs at law. Moritz and Herman Kopperl are sons of Mrs. Kopperl, who was also a niece of Mrs. Osterman and sister of Josephine Gidley. The buildings on lots 6 and 7 mentioned in clause 8 of the will have never been destroyed and are still intact.

The administrator, I. Lovenberg, brought this suit in the District

Court of Galveston County, making Josephine Gidley, Herman and Moritz Kopperl and others interested in the estate parties defendants, the purpose of the suit being to have the court construe the will and especially the clauses set out above, and instruct him what share of the estate, if any, each of the above named defendants would be entitled to. There was a further prayer that the court would adjudicate the trusts declared in clauses 8 and 13 of the will and if they should be held valid, appoint trustees therefor.

Josephine Gidley and Herman and Moritz Kopperl answered that clauses 8 and 13 created no more than a life estate in the life tenants designated and were insufficient to convey the title out of the estate, wherefore it descended to the heirs according to the laws of descent and distribution. On a trial without a jury the court adjudged the charitable devise expressed in clause 8 to be valid and vested the title of the property in the Osterman Widows and Orphans Home Fund (the corporation mentioned above) for the purposes and uses expressed in the will. The court further held that the property mentioned in clause 13 should pass after the death of Mrs. Redlich to the Hebrew Benevolent Society of Galveston, that being a corporate institution organized for the benefit of indigent Israelites in Galveston. Josephine Gidley and the defendants Kopperl have appealed and under appropriate assignments of error present for our determination the question hereinafter discussed.

Appellants contend that the charitable devise undertaken in clause 8 must fail and the property descend to the heirs: (1) Because the lots themselves are not devised, but only the rents of the houses thereon, and that not absolutely because of the provision in item 9 of the will which provides that if the houses on the lots mentioned are in any manner destroyed so as not to yield any rental the executors are to invest the proceeds of other property so as to produce an income of $6000, of which $4000 is to be paid to Mrs. Symonds and $1000 each to Isabella Dyer (Kopperl) and Mary Ann Brown during their lives. (2) That clause 8 of the will created only a contingent remainder for the charity mentioned dependent on the organization by the executors themselves of the widows and orphans home, and as this was not done the bequest fails. (3) It is void because the devise is made neither to a trustee certain nor for the use of a beneficiary certain, nor to any corporation or legal entity having capacity to take. (4) Because with respect to the proposed beneficiaries it is too vague and uncertain to be capable of execution.

In disposing of the first objection it should be borne in mind that if Mrs. Symonds should leave a child or children, the bequest of lots 5 and 6 to her and her heirs is absolute, thus leaving no provision for the charity in question.

The provision that the rents of the houses thereon shall go to Mrs. Symonds, Isabella Dyer and Miss Brown in the proportions named, is

modified in clause 8 by the proviso against destruction of the houses so that the property shall yield no revenue, but is supplemented by clause 9, which makes other provision for the life bequests to the three devisees named, not only by providing that other funds shall supply the life bequests in case the houses are destroyed, but also provides against deterioration in their rental value so that in any event $4000 per annum shall go to Mrs. Symonds and $1000 each to Isabella Dyer and Miss Brown during their lives.

These special provisions do not, however, affect the bequest to the unfortunate widows and orphans of Galveston, for in any event the entire rent of the houses goes to the charity named after the death of the three legatees thus provided for for life.

Note the provision that if the property shall fail to provide sufficient revenue to yield $6000 per annum it shall be supplemented from other sources for the benefit of the life legatees. If the houses be destroyed so that the property yield no revenue the life legatees are to be provided for entirely from other sources.

The charitable bequest is to be supplemented from no source, but after the death of the life legatees the entire income, however much or little the amount, is bequeathed to the charity named. It is thus seen that the provision concerning the possible destruction of the houses does not apply to the charitable bequest.

It was the manifest purpose of the testatrix that the life legatees should receive a certain sum per annum in any event. It is equally plain that the bequest to the charity should not exceed the income of the property set aside for that purpose. That the testatrix intended in case Mrs. Symonds died childless that the property after the death of the other life legatees should constitute a perpetual fund for the uses named appears to us reasonably clear.

But it is contended that a conveyance of all the rents of certain buildings forever does not convey the real estate on which the buildings rest. It is conceded that the general rule is otherwise, but it is urged that under our statutes controlling the conveyance of real estate such language is insufficient.

Article 624 of the statute relied on provides that no estate of inheritance or freehold in lands and tenements shall be conveyed from one to another unless the conveyance be in writing duly subscribed and delivered by the party disposing of same. Article 628 prescribes the form of a deed of conveyance.

We can not perceive the force of the contention. In the first place the provisions of the statute apply to deeds, and in construing them the legal effect of the language used is the question.

While real estate may be devised only by a written will it is nevertheless true that in the construction of a will the broadest liberality is allowed in ascertaining the intention of the testator, which when ascertained will be given effect without regard to the form of expression.

We do not mean to hold that a bequest may not be void because of a defective description of the thing undertaken to be devised, but merely that if the thing be identified by sufficient description, what the testatrix intended should be done with it will be given effect if that intention can be gathered from the entire instrument.

That the term "buildings" or "houses" include the real estate on which they are situate unless the general meaning of the terms is modified by the language of the context has been decided. Cassiano v. Ursuline Academy, 64 Texas, 675.

That an absolute devise of the entire rents of a named property will carry the property also seems to be well settled, and the reason of the rule is obvious. Such a use necessarily includes the corpus. 2 Jarman on Wills, 609; 18 Am. and Eng. Enc. of Law, 711.

We conclude, therefore, that the provision of the will under discussion had the effect to devise to the named charity the lots and improvements in question and should be given effect unless some one or more of the other objections urged is tenable.

Under the second objection stated above it is contended that the devise is void because the will created a mere contingent remainder dependent upon a condition which has never happened, viz., the organization by the executors of the Osterman Widows and Orphans Home; that the executors died without organizing it and the condition can therefore never happen. This involves the contention that the general purpose of the testatrix in this respect was subservient to her expressed desire that her executors should organize it and appoint its management. It involves a holding that the executors were clothed with discretion to organize it or not as they chose and empowered them to defeat by mere inaction the earnestly expressed desire of the testatrix.

It seems to us this is not only a strained construction of the will but does violence not only to the spirit but the letter of the instrument. We find no language in the will which would justify us in subordinating the purpose to be accomplished to the means provided for its accomplishment.

The testatrix must have known that the life legatees might outlive the executors, an event which actually occurred. To organize the institution before a fund was available for its maintenance would have been an act of folly. Besides, it is plain from this and other provisions of the will that the widows and orphans home was not to be organized until the death of the life legatees. This appears from provisions of item 8 of the will regarding the investment of portions of the rents until the death of the last life legatee under that item.

This brings us to a consideration of the last objection upon which appellants especially rely.

We take up first the contention that the class named as beneficiaries is too indefinite. The language used in designating the class is "for a widows and orphans home to be established with a view of contribut-

ing as far as possible toward ameliorating the condition and comforting the unfortunate of that class in the city of Galveston, State of Texas." It seems to us the objections of appellant are hypercritical. For instance, it is suggested that the terms used would include wealthy widows and orphans if crippled or in ill health or if unfortunate in any of the numberless forms in which misfortune comes to humanity. That it would include any person under the age of twenty-one years who had lost one or both parents, and this without reference to their condition in life.

If it were right for the court to approach in a spirit of criticism and with a view to break down and destroy a will which is pervaded from beginning to end with broad and delicate charity these criticisms might be upheld. But such bequests as the one in question are favored by courts of equity and will be upheld if from the four corners of the will a purpose can be gathered to establish a trust for a class sufficiently definite to be legally ascertained. Inglish v. Sailors' Snug Harbor, 3 Pet., 99.

A *home* is to be established. Why should we read into the will that it is for others than the homeless? Money is set aside for comforting the unfortunate. Why should we read into the will a purpose to apply it to the use of others than those who lack these comforts which money may buy? That the testatrix had no such purpose is plain. That the word "unfortunate" is used in the sense of "poor" or "indigent" is equally plain. A devise for the indigent widows and orphans of Galveston is unquestionably good. By thus designating a class the creation of a perpetuity is permissible. Had individuals been named the bequest in perpetuity would have been void. This conclusion answers also the objection that the bequest is void for want of a trustee or beneficiary capable of taking. But it seems to us there is another answer to that objection.

The executors were made the "detainers" of the estate until the provisions of the will were carried into effect. This would have kept them in office until the death of the life legatees had they lived so long, and it seems to us that the legal title to this trust property was in them as trustees until such time as the home might be organized under the provisions of the will, when it became their duty to transfer it to the corporation thus organized. The devise was not to the corporation, but the organization of the latter was provided for as a means of carrying out the purposes of the trust.

The executors being clothed with no such discretion as would enable them to defeat the trust by refusing to exercise it, the court will not allow it to fail for want of trustees.

"Whenever the only objection to a bequest is that it is for the persons described collectively by some characteristic trait by which they may be identified if the bequest is a charity within the statute and therefore valid, it is as good and available as it would have been at

common law had it been to one competent person in trust for another identified by the will."

The above quotation is from Moore v. Moore, 4 Dana, 354, and is cited by Justice Moore in Paschal v. Acklin, 27 Texas, 202. The case last cited and Bell County v. Alexander, 22 Texas, 350, are authority for our conclusion that the sufficient designation of the class will alone uphold the trust. We cite further upon the point, Perry on Trusts, sec. 315; Inglish v. Sailors' Snug Harbor, supra; Russell v. Allen, 107 U. S., 167; Hopkins v. Upshur, 20 Texas, 89; Vidal v. Howard's Executors, 2 How., 127; Jones v. Habersham, 107 U. S., 191.

In Nolte v. Meyer, 79 Texas, 351, a devise to the German citizens of a certain neighborhood, without defining the limits of the neighborhood, was held too indefinite to enable the court to ascertain the class to be benefited. We have no such difficulty here. The other authorities cited by appellant on this point are equally inapplicable, except the case of Heiss v. Murphy, 40 Wis., 276, which is so against the weight of authority we must refuse to follow it.

Under the eighth assignment of error the action of the court is assailed in upholding the charitable bequest in the thirteenth clause of the will and in vesting the forty shares of stock in the corporation known as the Hebrew Benevolent Society of Galveston upon the death of Mrs. Redlich, because the class named as beneficiaries is too uncertain and because no trustee was appointed by the testatrix to carry out the trust. These objections have necessarily been disposed of in what has been said in disposing of the objection to the eighth clause of the will. We therefore overrule the assignment.

Upon the first question discussed in this opinion we have some doubt. Upon the sufficiency of the bequest in other respects we are clear. The conclusion we have reached renders it unnecessary for us to pass upon the contention of appellee that if the trusts in question should for any reason be held invalid the property passed to the residuary legatees though we are inclined to think the proposition tenable. We have not deemed it necessary to add anything to the mass which has been written upon the question, but have contented ourselves with a statement of the established rule, an application of it to the facts of this case, and a citation of leading authorities in its support. As the case stands the appellants have no interest and are in no position to complain of the method adopted by the trial court for carrying out the purposes of the testatrix as expressed in the will. We are of opinion the judgment should be affirmed and it is so ordered.

*Affirmed.*

Writ of error refused.