**KING et al. v. HOWELL.**

No. 13619.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 23, 1938.

Olan R. Van Zandt, of Tioga, for appellants.

Webb & Webb, of Sherman, for appellee.

SPEER, Justice.

This is an appeal from the district court of Grayson County, Texas, in which a judgment was entered, construing the terms of a will.

The record is before us upon an agreed statement of facts, consisting of a copy of the will, and the names of all persons who could, under the contention of either party, have an interest in the property involved, under the terms of the will, asked to be construed.

From this record may be made a sufficient statement of the case, and the points raised to enable us to discuss the points considered determinative of the appeal.

On March 10th, 1906, J. J. Hudspeth and his wife, Julia A. Hudspeth, execut-ed their joint and mutual will, which reads as follows:

"State of Texas, Grayson Co.

"Know All men by these presents, that we, J. J. Hudspeth and Julia A. Hudspeth, husband and wife, do make this our will.

"In case of the death of either of us, the survivor, husband or wife, shall come into possession of all our property both personal or real estate, and shall have the right to sell and convey, personal and real estate, rent or lease as they see proper.

"After the death of the surviving one, after suitable monuments have been erected at our grave, if any property is left, personal or real estate, it shall be equally divided between the nearest blood kin, of the said J. J. Hudspeth and Julia A. Hudspeth.

"This is our last will.

"Witness our hands this March 10th, 1906.

"(Signed)   J. J. Hudspeth
"Julia A. Hudspeth."

Neither J. J. Hudspeth or his wife, Julia A. Hudspeth, had ever been married to any person than the other; the respective fathers and mothers of each were dead.

J. J. Hudspeth died on July 4th, 1915, and the will was duly filed and ordered probated, at the instance of the wife.

Julia A. Hudspeth died October 10th, 1935, and the will was again filed and ordered entered for probate, and an administrator with will annexed appointed by the court. The administrator qualified in the manner provided by law, and joined with certain other interested persons in the petition to have the provisions of the will construed.

At the date of the death of J. J. Hudspeth, he had only two brothers, of the full blood, living. They were Tom Hudspeth and S. H. (Harrison) Hudspeth; no sisters of the full blood were then living. One brother and two sisters had predeceased him, some of whom left descendants, but we deem it unnecessary to here name the deceased ones or their descendants. Tom and Harrison Hudspeth both died after the death of J. J. Hudspeth, but both predeceased Julia A. Hudspeth. Tom Hudspeth left surviving him nine children, all of whom are living, are of full age and are parties to this suit.

Harrison Hudspeth left surviving him a daughter and three grandchildren, the descendants of a deceased daughter; the date of the death of that daughter is not shown, other than as being prior to the death of Julia A. Hudspeth; the grandchildren are likewise of full age and are parties to this action.

J. J. Hudspeth also had three half brothers and seven half sisters; the half brothers living at the death of Julia A. Hudspeth were John Hudspeth, Andrew Hudspeth and Ed Hudspeth; the half sisters living at that time were Nannie Sanders, Mabel Ball Cooper and Fannie Bowles; the half sisters who predeceased Julia A. Hudspeth were Martha Mullins, Mary Nichols, Pearl Burke and Grace Stephenson. They each left children surviving them and the descendants are parties here.

Mrs. Julia A. Hudspeth had in all four sisters and three brothers; they were Mrs. A. E. Walthal and Mrs. M. J. Epler, each of whom died after the death of J. J. Hudspeth and prior to the death of Julia A. Hudspeth. Mrs. Walthal left surviving her an only daughter, now Minnie De Cordova; Mrs. Epler left surviving her an only son, Eugene Epler. The other two sisters and three brothers were Harriett Gay, Martha Manning, John Manning, Sam Manning and Willie Manning, all of whom died prior to the death of J. J. Hudspeth and, of course, prior to that of Julia A. Hudspeth. Only Harriett Gay left descendants, they being four grandchildren, the descendants of an only daughter of Mrs. Gay.

After a finding of the facts to be as we have above set out, the court found as a matter of law and so entered judgment as follows:

"That the court concludes as a matter of law that by the words 'nearest blood kin' is meant the brothers and sisters of J. J. Hudspeth that were living at the time of the death of the said Julia A. Hudspeth, and the nephew and niece of the said Julia A. Hudspeth, who were living at the time of her death, to the exclusion of all others.

"That the brothers and sisters of J. J. Hudspeth who were living at the time of the death of said Julia A. Hudspeth are John Hudspeth, Andrew Hudspeth, Ed Hudspeth, Nannie Sanders, Mabel Ball Cooper and Fannie Bowles.

"That the niece and nephew of the said Julia A. Hudspeth are Minnie De Cordova and Eugene Epler. That the said parties above named take as a class."

Judgment was entered construing said will as above indicated, and defendants excepted, gave notice and have perfected this appeal to the Fifth Supreme Judicial District, and by order of the Supreme Court has been transferred to this court for consideration. We later, at the request of appellants, for good cause shown, passed submission of the case to the heel of our docket, and that has occasioned the apparent delay in its determination.

It is contended by appellants that since the will was a single instrument and the common will of both J. J. Hudspeth and his wife, it should be construed that the parties meant that after the determination of the estate granted to the survivor, the remainder should vest at once in the nearest blood kin of the one who died first; that is to say, that it should be construed to mean when J. J. Hudspeth died on July 4th, 1915, the remainder estate in his part, if any, then and there vested in his nearest blood kin; J. J. Hudspeth's nearest blood kin at the time of his death were his two brothers of full blood, Tom Hudspeth and S. H. (Harrison) Hudspeth. This being true, and they having since died, the estate would descend to their heirs under the law of descent and distribution.

It is further contended by appellants that by the terms of the will it was the intention of the Hudspeths that the remainder estate passing after the estate left to the survivor should cease, should go one-half to the nearest blood kin of J. J. Hudspeth and the other one-half to those bearing that relation to Julia A. Hudspeth. They further argue that the expression "nearest blood kin" to each of the testators would not constitute a class, and assign error to the court so holding.

It is insisted by appellants that the rule in this state concerning the construction of wills, is that a broad liberality is required, citing Gidley v. Lovenberg, 35 Tex.Civ.App. 203, 79 S.W. 831; Id., 98 Tex. 617. The soundness of such a broad rule cannot be denied, but it must be borne in mind that in the application of this principle of liberality, all parts of the will must be construed together and the intent of the testator must be arrived at by considering the whole, and not from

detached, segregated and isolated words, sentences or clauses. Haupt v. Michaelis, Tex.Com.App., 231 S.W. 706; Heller v. Heller, 114 Tex. 401, 269 S.W. 771. A leading case on the subject and one cited by both parties here on different points, in which a writ of error was refused, is Hagood v. Hagood, Tex.Civ.App., 186 S. W. 220. There it was said [page 223]: "It is a cardinal rule in the interpretation of wills that the intent of the testator is the object to be sought." To this may well be added that such intent must be ascertained if possible from the language used by the testator in the solemn instrument, bearing in mind that he knew the law applicable in such cases and intended that it would be applied.

■ We can find no support in the wording of the will for the contention that the parties intended that the remainder estate should be divided one-half to the nearest blood kin of J. J. Hudspeth and the other one-half to the nearest blood kin of the wife. Nor, indeed, can it be said they intended that the remainder estate should be divided equally among the nearest blood kin to both testators. They had no children and both doubtless knew they had no blood kin common to both.

The will evidences the fact that each of the testators desired that the survivor of the union should have the fullest protection with reference to the use and benefit of their common earnings; such one "shall come into possession of all our property both personal and real estate, and shall have the right to sell and convey, personal and real estate, rent or lease as they see proper." It is doubtful if they could have employed language expressing more strongly the confidence each reposed in the other. Neither was afraid the other would sell or otherwise dispose of the property for the purpose of destroying or defeating the remainder estate. We may safely assume that the instrument evidences the fact that the uppermost thing in the mind of each was the full protection of the other. But as stated above, we must look to every part of the will to discover their whole intention. They were presumed to know that unless the will disposed of the entire estate the portion not covered would pass under the law of descent and distribution. There being no children, if the estate was community, the survivor would take that part not disposed of under the will. This in the nature of things, would defeat a claim of heirs of the one who died first, to an interest therein.

The second and last paragraph of the will covers the contingency mentioned and provides effectively that after the death of the survivor, if any property is left, it shall be equally divided between the nearest blood kin of each of the testators. The trial court properly construed this expression to create a class, and that under the will the remainder estate should be divided equally between those included in the class.

■ In the case of Hagood v. Hagood, supra, discussing the term "class" as relating to the construction of wills, it is said: "A 'class,' as used in the law of wills, is where several persons answering the same description sustain the same relation to the legacy so that one word describes them all. * * * A number of persons are said to form a 'class' when they can be designated by the same general name as 'children,' 'grandchildren,' 'nephews,' 'brothers,' or 'sisters.' The gift must be an aggregate sum to a body of persons uncertain in number at the time of the gift." In the instant case, the gift was to the "nearest blood kin" to each of the testators. In the first place, those who should subsequently take the contingent remainder of the estate were uncertain both as to the individuals then living and as to the number who would participate, and in the second place, under the circumstances as they existed when the will was made, it was reasonably certain that if and when it should be determined that there was a remainder left after the survivor's estate was satisfied, there would be some person or group of persons who bore the relation to each of the testators of "nearest blood kin." In our opinion, this was as nearly a designation of a class of persons who should take the remainder as if the terms children, grandchildren, brother or sister had been used. To constitute a "class", as that term is used here, it is not necessary that the blood relation be identical in every instance. As said in the Hagood Case, supra, it is their common relation to the legacy. By the terms of the will, the remainder was to be equally divided between those persons who were the nearest blood kin to the testators. They each bore identically the same relation to the legacy, for it was to be equally divided.

Appellants further complain at the action of the court in holding that the nearest blood kin of each of the parties was to be determined as of the time Julia A. Hudspeth died. They say J. J. Hudspeth's nearest blood kin should be determined as of the date of his death and the nearest blood kin of Julia A. Hudspeth as of the date of her death. The will is such that the entire estate is entrusted to the survivor to handle, sell and dispose of at his or her will and pleasure. In the circumstances of this case the survivor, Mrs. Hudspeth, had the power to absorb the entire estate and defeat any possible remainder. This was known to the husband when he made the will. With all this in mind, we cannot say that a fair and liberal interpretation of his intention, as evidenced by the will, meant that he intended that the remainder, after the wife was through with it, should pass to his nearest kin at the time of his death; but we rather think it means he intended the relationship should be determined at the end of the wife's estate, provided there was any of the property "left" at that time.

Appellants quote from an expression found in 69 C.J. p. 246, sect. 1267, where it is said: "The ascertainment of any class which is described in a will should be referred to the earliest possible period consistent with a fair interpretation of the will." This is offered in support of the contention that the nearest blood kin of J. J. Hudspeth should be determined at his death; but there was no estate to divide among those named until the estate of Julia A. Hudspeth was terminated. In one sense, whether or not there would be a remainder depended upon the extent of her estate therein, and no class of persons could be determined until the happening of this event. It follows that the ruling of the court that they intended it should be ascertained at that time was in keeping with the doctrine quoted from C.J. above.

The persons named in the judgment of the court were the nearest blood kin to both testators at the time the first estate was terminated. Whatever there was left in the estate at that time clearly passed equally to the members of the class named.

There is another matter in this record which we deem it expedient to briefly mention. There were certain defendants who are alleged to be non-residents of the state and some whose residence is unknown, and prayer was for citation to them by publication. It does not appear that such process was ever issued or published. The judgment recites that all parties appeared in person and by counsel. We must give verity to such recitations insofar as this case is concerned. It is also true that from the view taken of the case by the trial court, which we think correct, those parties have no interest in the estate anyway. Yet, if they were not in court they are not bound by the decree. The matter has not been raised by either party, and we express no opinion relative to any claim they may have. If they were before the court, the nature of this suit is such that the judgment disposes of them, along with the forty or more other defendants.

We have carefully studied every phase of this record, and find no fault with the judgment rendered, and it is therefore affirmed.