**Mary Downing TABASSI, Appellant,**

**v.**

**NBC BANK—SAN ANTONIO, Independent Executor of the Estate of Monib Tabassi, Deceased, et al., Appellees.**

**No. 3–86–155–CV.**

Court of Appeals of Texas,
Austin.

Sept. 30, 1987.

Rehearing Denied Oct. 14, 1987.

Chilton Maverick, San Antonio, for appellant.

John L. McClung, Thurmond & Thurmond, Stanley E. Crawford, Jr., Cox & Smith Inc., San Antonio, for appellees.

Before SHANNON, C.J., and BRADY and ABOUSSIE, JJ.

PER CURIAM.

Appellant, Mary Downing Tabassi, widow of Monib Tabassi, sought a declaratory judgment and other equitable relief with respect to her husband's will, in the county court of Comal County, sitting in matters probate. She appeals the court's allocation to her of one-half of a substantial unpaid federal income tax liability, attributable to income generated by her husband's separate property funds on deposit in foreign bank accounts. She also appeals the court's determination that gifts by the deceased of up to $495,851 of his special community property to his two sons of a former marriage did not amount to constructive fraud. We will affirm the judgment.

Appellant, an art teacher at San Antonio College, married Monib Tabassi in 1980 in Mexico City. Tabassi was an Iranian national who had fled that country with his two sons, Lame and Sane, who were 18 and

19, respectively, at the time. The couple lived in San Antonio until Tabassi died of cancer in 1986. They had one child during the marriage, Rashid.

At the time of her marriage, appellant's teaching salary was approximately $743 a month. She also owned her residence in Marion, Texas. The decedent's sole income during the marriage consisted of the interest generated by his separate property funds on deposit in foreign bank accounts.

The decedent's estate, including appellant's community property interest, was valued in the inventory filed by appellee-independent executor, NBC Bank—San Antonio, N.A., at $3,158,713. Appellant's community one-half interest in her husband's estate, including her community one-half interest in the residence that the decedent purchased for the couple and the assets specifically bequeathed to her in the will, amounted to over $600,000. The will also established a testamentary trust, funded with approximately $548,000 in assets, for the benefit of Rashid Tabassi. The trust, providing for the child's health, support, maintenance and education, is to exist until Rashid reaches the age of 25. The decedent also bequeathed to Rashid his community one-half interest in the family residence, and directed that the trust pay all taxes and maintenance expenses on the residence for the duration of the trust.

Lame and Sane Tabassi each received $333,000 under the will. Prior to his death, the decedent had also made generous *inter vivos* gifts to his sons of money and assets, the validity of which appellant unsuccessfully challenged in the probate court.

Before the probate court, appellant contested the appellee-independent executor's position as to the proper interpretation of the will with respect to the allocation of $943,200 in unpaid federal income taxes, for the tax years 1981 through 1986, which had accrued on the interest earned by the decedent's separate property funds held in foreign bank accounts. The trial court found, and the parties do not dispute that the tax liability had accrued because neither the decedent nor appellant were aware that their respective gross incomes for federal income tax purposes included interest income earned outside this country. The court further found that the will unambiguously evinced an intent that the estate be liable only for those taxes and debts for which the testator was individually liable, and held that as the income generated by the separate property was community property, appellant was during the marriage accordingly liable for one-half of the income tax liability attributable to it. If appellant is required to pay one-half or $471,-600 of this tax liability, the net value of her share of the decedent's estate will be reduced to $122,000, the value of her one-half community interest in her homestead.

The applicable will provisions directed the executor to

[p]ay *all of my taxes*, including Federal Estate, State Inheritance and Estate Taxes and other death taxes, and including any interest or penalties thereon, payable to the United States of America or England or any state or political subdivision thereof with respect to property included in my gross estate for the purpose of any such tax, out of my residuary United States and England property estate without apportionment, except as otherwise provided herein.

\*       \*       \*       \*       \*       \*

I further direct my Executor to pay out of my residuary United States and England property estate *my just debts* payable to any person residing in the United States of America or to any corporation or other entity organized or engaged in business in any state of the United States of America or in England. (emphasis added)

Both parties concede that the interest income earned by the decedent's separate property was community property, albeit the decedent's sole management community property. *See* Tex.Fam.Code Ann. § 5.22 (1975). It is also undisputed that under federal law, one-half of all community income is taxable to each spouse, regardless of which spouse exercises control over the income at issue. *U.S. v. Mitchell*, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971); *Hopkins v. Bacon*, 282 U.S. 122, 51

S.Ct. 62, 75 L.Ed. 249 (1930). Appellant contends, however, that although the decedent was unaware during his lifetime of the tax liability that was accruing, the resultant latent ambiguity that exists in the language of the will may be eliminated once consideration is given to evidence of the decedent's situation at the time the will was executed. *Stewart v. Selder*, 473 S.W.2d 3 (Tex.1971). Specifically, appellant refers to her testimony to the effect that during their marriage the decedent always treated his assets and the income therefrom as belonging solely to him, the community property laws of the state notwithstanding, and that the decedent "always paid his taxes on his earnings" and she on hers. Hence, it is appellant's contention that the directive to "pay *all my taxes*" must be construed in light of the decedent's situation as an Iranian immigrant unaware of and unconcerned with the tax consequences impressed by state and federal law upon earnings generated by assets owned prior to his marriage and immigration to this country. It is inconceivable, appellant argues, that the decedent would have intended that the substantial estate left her be dissipated by imposing upon her, as an unexpected incident of the state's community property laws, liability for a large tax debt generated by income from property over which he invariably exerted sole ownership and control.

The appellee-independent executor, joined by the decedent's sons, appellees Lame and Sane, concede that while it is clear from the terms of the will that the decedent did not contemplate any back tax liability, the will was nevertheless unambiguous in its expression of an intent that only the *testator's* taxes and debts be paid from the residuary estate. They assert that a court may not rewrite a will based upon a mistake of fact or law.

■ None of the parties have referred us to authority, and we have found none, that addresses this precise issue. We find, nonetheless, that the trial court's judgment may be upheld through the application of traditional principles of will interpretation. It is axiomatic that the fundamental goal in interpreting a will is to determine the testator's expressed intent regarding the disposition of his property. *Powers v. First National Bank*, 138 Tex. 604, 161 S.W.2d 273 (1942). An unambiguous will must be construed as written within the four corners of the instrument. *Frost National Bank of San Antonio v. Newton*, 554 S.W.2d 149 (Tex.1977). The intent must be drawn from the will, not the will from the intent. *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960). When, however, words are capable of more than one meaning, evidence is admissible as to the testator's intent in using the words at issue. This means that extrinsic evidence which will help to explicate the sense in which words were used by the testator, such as evidence concerning the testator's situation, the circumstances existing when the will was executed, and other material facts that will enable the court to place itself in the testator's position at the time the will was executed, are admissible. *Stewart v. Selder, supra; El Paso National Bank v. Shriners Hospital, Inc.*, 615 S.W.2d 184 (Tex.1981). However, the intention of the testator must, in the last analysis, be found in the words of the will, and thus his other declarations of intent dealing with the subject of the will are generally not admissible. *Stewart v. Selder, supra; Peet v. Commerce and E.S.R. Co.*, 70 Tex. 522, 8 S.W. 203 (1888).

■ Appellant would have us infer from an examination of the circumstances existing at the time the will was executed that *if the testator had known* about the income tax liability that was accruing upon the interest income, he would have wanted to assume the entire tax liability himself. Although appellant's testimony that during their marriage the decedent "always" paid his taxes on his own earnings is of some probative value on the issue, we find it inconclusive. It appears that the decedent paid federal taxes for only two of the five years that he was living in this country. Two checks written by the decedent made payable to the Internal Revenue Service were introduced in evidence. One check, dated May 17, 1983, in the amount of $1,815.15 was presumably in payment of

the decedent's 1982 tax obligation and was filed with a single return. The second check was in the amount of $2,460.98, presumably in payment of 1984 taxes, a year when the decedent filed a joint return with appellant. From this scant extrinsic evidence, we are unable to impute to the will an intention that the decedent assume sole liability for $943,200 in back taxes.

Rather, we find that because the decedent was, during his lifetime, unaware of the tax liability here at issue, the will consequently may not be deemed to express *any* intent with respect to the testator's wishes as to the allocation of this unknown tax debt. Circumstances that arise after the testator's death and as to which during his lifetime he was completely ignorant may not be allowed to create an ambiguity where one would not otherwise exist. Instead, we will presume that the testator knew the applicable law, here, the operation of state and federal law with respect to the characterization and allocation of liability for taxes generated by income on separate property, and, in the absence of a contrary intent clearly expressed, we will presume that the testator intended that the existing law be applied. *King v. Howell*, 120 S.W.2d 298 (Tex.Civ. App.1938, no writ). In analogous situations, courts have held that a testator must by unequivocal language direct that a tax that will be imposed upon a beneficiary be paid from the testator's estate, because without such language, a will may not be construed to make a gift by implication. *Sneed v. Pool*, 228 S.W.2d 913 (Tex.Civ. App.1950, writ ref'd, n.r.e.); *Norton v. State*, 210 S.W.2d 820 (Tex.Civ.App.1948, writ ref'd); *see also* 4 Bowe-Parker; *Page on Wills* § 30.18 (1961) (fact that testator makes no specific provision for the case which has arisen, or that subsequent changes make it quite likely that he would have made a provision if he had thought that they would happen, does not justify the court in construing the will so as to make a gift by implication). For the foregoing reasons, we overrule the second point of error.

In her first point of error, appellant complains of the trial court's failure to find a constructive fraud had been committed by virtue of the decedent's *inter vivos* gifts to his sons, Lame and Sane, of up to $495,851 of the decedent's special community property. Prior to his death, the decedent made gifts to each of his sons of $100,000 certificates of deposit and of homes worth approximately $50,000 and $70,000, in addition to miscellaneous gifts of personal property and cash.

The trial court found that the gifts which were funded by the decedent's sole management or special community property were in reasonable proportion to the community property remaining after the gifts were made; that the gifts to the sons, who had accompanied the decedent to this country from Iran, were not unfair to appellant because the gifts were justified by special circumstances, including the fact that the purpose of the gifts was to assist the sons with their support, an obligation that had been expressly recognized in an antenuptial agreement between the decedent and appellant; that the community funds used for the gifts were reasonable in proportion to the community assets remaining; the transfers were not capricious, excessive or arbitrary under the circumstances; other gifts to Rashid Tabassi, the only child of the marriage of appellant and the decedent, were substantial and sufficient to adequately assist appellant with his support; and that as the gifts were not made in actual or constructive fraud on appellant, she was not entitled to recover the same from either the sons or the estate.

Appellant argues, among other things, that the trial court improperly ruled on the propriety of the *inter-vivos* gifts prior to ruling on the unpaid tax liability issue and that this resulted in the improper resolution of the former issue, applying the test for constructive fraud set forth in *Horlock v. Horlock*, 533 S.W.2d 52 (Tex.Civ.App. 1975, writ dism'd). However, we find the order in which the issues are considered to be irrelevant to the resolution of either.

In considering a wife's claim of constructive fraud against her share of the

community estate by virtue of gifts of community property by the other spouse, the courts have considered three primary factors. These factors are the size of the gifts in relation to the total size of the community estate, the adequacy of the estate remaining to support the wife, the gift notwithstanding, and the relationship of the donor to the donee. *Horlock v. Horlock, supra.* While there may be a fraud on one spouse's community interest where the special community property of the other spouse is involved, the fact that the gifts at issue consist of special community property is important in considering the rights of disposition which accrue to that spouse. It is not necessary that one spouse approve or agree with the dispositions made by the other spouse of that spouse's special community property. *Horlock v. Horlock, supra. Murphy v. Metropolitan Life Insurance,* 498 S.W.2d 278 (Tex.Civ.App.1973, writ ref'd, n.r.e.). Nor is it necessary, when proceeding under a theory of constructive fraud, that the wife establish fraudulent intent. *Givens v. Girard Life Insurance Company of America,* 490 S.W.2d 421 (Tex.Civ.App.1972, writ ref'd, n.r.e.). A gift of one spouse's share of the community property will be set aside, and constructive fraud found, where the gift is unfair to that spouse. *Horlock v. Horlock, supra; Murphy v. Metropolitan Life Insurance Company, supra; Givens v. Girard Life Insurance Company of America, supra. See Redfearn v. Ford,* 579 S.W.2d 295 (Tex.Civ.App.1979, writ ref'd, n.r.e.). Each case of claimed constructive fraud will necessarily turn on the facts presented.

Looking at the above factors, we find that there was ample support for each of the trial court's findings of fact in support of its conclusion that there was no constructive fraud involved in the gifts made by the decedent to his sons. The evidence shows that appellant was well-aware of the decedent's obligation and desire to support the two sons, who had accompanied him to this country from Iran. The antenuptial agreement between the couple made this obligation explicit to appellant. Appellant's testimony indicates that she was completely aware of and usually assisted, although sometimes not without protest, her foreign-born and terminally ill husband in effectuating the gifts of financial support to his sons. Although appellant concedes that were she to take under the will a share of the estate undiminished by the unpaid federal income tax liability, her constructive fraud argument would be moot, we find, that even with her diminished share of the estate, appellant was financially benefitted to a great extent during her husband's lifetime and adequately provided for by his will. We are thus unable to disturb the trial court's finding that she was not the victim of constructive fraud by virtue of the appellant's gifts to and financial support of his sons. The first point of error is overruled.

The judgment is affirmed.