Dunham v. Dunham 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-272-CV

        JANE E. DUNHAM,
                                                                                               Appellant
        v.

        DAVID M. DUNHAM,

                                                                                               Appellee
 

From the 249th District Court
Johnson County, Texas
Trial Court # 5063-93
                                                                                                    

O P I N I O N
                                                                                                    

          Jane Dunham appeals the property division in a divorce decree. The court, granting the
divorce on the grounds of insupportability, denied Jane's claim of constructive fraud, divided the
community property, and awarded her a $15,000 judgment against her husband, David Dunham. 
Jane brings five points of error. 
          The first three points relate to her claim of constructive fraud. Jane generally claims that
a number of David's expenditures during their marriage created a presumption of constructive
fraud. In point one Jane complains that the court did not require David to overcome the
presumption of constructive fraud and demonstrate that the expenditures were fair to her. In
points two and three, she alleges that there was no evidence, or insufficient evidence, that the
transactions were fair to her.
          The fourth point asserts that the court erred in failing to reimburse the community estate
for payments David made on his separate-property debts and to his sons and mother. Her fifth
point alleges that the court erred in failing to award her at least 50% of the community estate. 
BACKGROUND
          Jane, a teacher, and David, an orthodontist, married on August 12, 1988, and divorced on
May 9, 1994. At the time of the marriage, David was the sole owner of his orthodontist practice
in Cleburne. He brought a substantial amount of separate property into the marriage, and he
continued to make payments on various premarital debts during the marriage. Issues relating to
David's separate property and payment of the premarital debts are the primary source of Jane's
complaints.
          David paid on two notes that existed prior to his marriage to Jane and were payable to
Irene Dunham (David's ex-wife). One note was a court-ordered, unsecured note executed incident
to his divorce from Irene. David paid a total of $33,800 on that note during his marriage to Jane. 
The second note payable to Irene was for David's purchase of real property that he used for his
orthodontist practice. The principal amount of the second note decreased during the marriage by
$89,526, thereby increasing David's equity interest in the property by that amount. The court also
found that David paid another $140,188 in expenses on the property during his marriage to Jane. 
          Jane also complains of monies David spent on a number of automobiles during their
marriage. Two were Hondas (1985 and 1987 models), which were the subject of one premarital
promissory note (the "Honda" note). David allowed his mother and one of his sons to drive these
cars. David bought a third car, a 1988 Honda, during the marriage and renewed the prior Honda
note to include the new car. Finally, Jane complains of one or more gifts to another of David's
sons for the purchase of two cars


 during their marriage. 
CONSTRUCTIVE FRAUD
          Jane claims that the above expenditures, which were made by David from community funds
during the marriage, were unfair to her, thus giving rise to a claim for constructive fraud.


 
Constructive fraud is the breach of a legal or equitable duty, which the law declares fraudulent
because it violates a fiduciary relationship. Fanning v. Fanning, 828 S.W.2d 135, 148 (Tex.
App.—Waco 1992), rev'd on other grounds, 847 S.W.2d 225 (Tex. 1993). A presumption of
constructive fraud arises when a spouse unfairly disposes of the other spouse's interest in
community property without the other's knowledge or consent, and the disposing spouse has the
burden to prove the fairness of the disposition. Matter of Marriage of Devine, 869 S.W.2d 415,
422 (Tex. App.—Amarillo 1993, writ denied) (citing Mazique v. Mazique, 742 S.W.2d 805, 808
(Tex. App.—Houston [1st Dist.] 1987, no writ)) (emphasis added). Only gifts that are excessive
and capricious, made with intent to defraud the other spouse, may be set aside as a constructive
fraud. Fanning, 828 S.W.2d at 148.
          Jane cites four occurrences in support of her argument of constructive fraud: (1) the
payments relating to David's business property; (2) payments on David's unsecured debt to his
ex-wife; (3) payments on the Honda note; and (4) the expenditure of approximately $8,000 on used
automobiles for David's middle son.



          There is no evidence that any of the complained-of actions were taken without Jane's
knowledge and consent. See Marriage of DeVine, 869 S.W.2d at 422; Tabassi v. NBC Bank—San
Antonio, 737 S.W.2d 612, 617 (Tex. App.—Austin 1987, writ ref'd n.r.e.). In fact, Jane's own
testimony establishes the contrary. She testified that she was aware of the payments to Irene
Dunham, and of the payments on the two Hondas used by David's mother and son. She testified
that she was "just more than glad whatever [David] did for [his kids], to put them through school,
to pay for their cars." Further, Jane testified that she helped David's son pick out one car, the
purchase of which she now claims is fraudulent. Jane knew that David was spending money on
cars for his sons, and, from her testimony, she not only consented but approved. Further, we
recognize that a portion of the Honda note is for the purchase of David's 1988 Honda that was
made during the marriage. It is, therefore, community property and would properly be paid for
with community assets. See Tex. Fam. Code Ann. § 5.01(b) (Vernon 1993).
           These facts do not give rise to a presumption of constructive fraud. The evidence
established that Jane knew of, approved of, or consented to each of the transactions of which she
now complains, and there is no evidence that the transactions were otherwise unfair to her. See
Fanning, 828 S.W.2d at 148; Marriage of DeVine, 869 S.W.2d at 422; and Tabassi, 737 S.W.2d
at 617. 
          Jane also complains that, once the parties were separated, David paid approximately
$16,000 to discharge the Honda note rather than applying that money to the community tax debt
that, as of January 1, 1993, totalled $59,000. She claims that his actions were unfair to her. 
However, David's actions cannot give rise to a claim for constructive fraud, as it is undisputed
that at least $14,500 of the $16,000 used to pay off the automobile note was David's separate
property, traceable to the sale of land he inherited from his father. See Fanning, 828 S.W.2d at
148 (misuse of community funds gives rise to constructive fraud). The remaining $1,500 paid does
not give rise to a presumption of constructive fraud because some portion of the note was for the
community-property 1988 Honda. 
          The record does not support Jane's claim that the court erred in denying her claim for
constructive fraud. Points one through three are overruled.
RIGHT OF REIMBURSEMENT
          Jane next argues that the court erred when it failed to reimburse her one-half of certain
community expenditures on David's separate property during the marriage. She complains of the
same actions that are the subject of her constructive-fraud claims: payment of the various
premarital debts and the money he gave to his son for the purchase of the two automobiles. She
additionally claims that it was not fair to the community that David used his separate property to
pay off his separate debts, rather than community debts, when he saw the inevitable end of their
marriage.
          The Texas Supreme Court has noted that a claim for reimbursement is an equitable one that
requires the court to look at all the facts and circumstances, including offsetting benefits, to
determine what is fair, just, and equitable. Penick v. Penick, 783 S.W.2d 194, 197 (Tex. 1988). 
The court, drawing an analogy between a claim for reimbursement and a claim for quantum
meruit, outlined a situation wherein the application of reimbursement principles is appropriate: 
(1) one estate has contributed to another estate; (2) the contributing estate has not received a quid
pro quo, and (3) the benefitted estate has thereby been unjustly enriched. Id. at 197-98.
          A claim for reimbursement arises when funds or assets from one marital estate are used
to benefit another marital estate without the contributing estate receiving some benefit. Vallone
v. Vallone, 644 S.W.2d 455, 459 (Tex. 1982). The party claiming a right of reimbursement has
the burden of pleading and proving that expenditures from the community were made and that they
are reimbursable. Id. Reimbursement is not available as a matter of law, but lies within the
discretion of the court. Id. Great latitude is given to the court in applying equitable principles to
value a claim for reimbursement. Penick, 783 S.W.2d at 198.
          Figure 1 reflects the findings and conclusions relevant to Jane's reimbursement claims, and
any offsetting benefits, each of which is supported by the evidence.




Figure 1




Trial Court's
Findings 
and Conclusions

Benefit to 
David's 
Separate Estate

Benefit to 
Community Estate

Potential
Community Claim
for 
Reimbursement



David made Payments to
Irene Dunham on
unsecured note during
marriage to Jane


        $33,800


    no finding

     
     $33,800



David was purchasing
building for his 
practice at 301 North
Ridgeway from Irene
Dunham

expenses $140,188

decrease in 
principal $89,526 
 $229,714

tax benefit $42,056 
saved
rental


 $159,390 
 $201,446 




     $28,268



David was purchasing
rental property at 
303 North Ridgeway

decrease in 
principal $22,971

rental 
income $22,883
enjoyed


         $88



TOTAL POTENTIAL
CLAIM FOR 
REIMBURSEMENT

 

 


     $62,156




 
          The court made no specific findings either denying or allowing a community right of
reimbursement, but we will assume, without deciding, that where the evidence established a
potential claim for reimbursement, the court allowed such a claim. We further assume that the
court considered and divided the community claim for reimbursement when it divided the
community estate.
Payments to Irene Dunham
          The court found that during his marriage to Jane, David paid $33,800 on a court-ordered
note to his ex-wife. There is no evidence that David's separate funds were used in satisfaction of
this debt, and David does not argue that the community received any benefit from payments on
this note. Community funds were used on this separate debt, yet the community received no quid
pro quo for its expenditure. The court could have found that the community had a claim for
reimbursement for the $33,800 the community contributed to this debt.
Payments on David's Business Property
          The community estate also made payments on David's separate property that he used for
his business. The court found that the community paid $89,526 toward the principal of the note
and paid another $140,188 on taxes, interest, insurance, maintenance, and depreciation. However,
the court also found facts demonstrating a benefit to the community from the payments, including
saved rental expenses for his business in the amount of $159,390, and tax benefits in the amount
of $42,056. 
          Considering the offsetting benefits to the community, the court reasonably could have
found a right of reimbursement, but could have also refused to reimburse an amount greater than
the net loss to the community. Therefore, we will assume that the court awarded a $28,268 right
of reimbursement to the community, representing the difference between the total community
expenditures and the total community benefit. (See Figure 1). 
Payments on the Rental Property
          The only findings the court made relevant to a community claim for reimbursement for
payments on the rental property located at 303 Ridgeway are that David enjoyed a $22,971
reduction in principal, and that the community received $22,883 in rental income during the
marriage. Recognizing that the payments toward the principal are appropriately offset with the
rental income enjoyed by the community, the court could have determined that there was an $88
deficit to the community and awarded the community a right of reimbursement in that amount.
Payments on the Honda Note
          The court made no findings and conclusions relevant to Jane's claim for reimbursement for
the community's expenditures on the Honda note. Jane could have requested specific findings of
values paid by the community estate that may have given rise to a community claim for
reimbursement, but she did not. See Tex. R. Civ. P. 298. Therefore, we imply that the court
made all necessary findings in support of the judgment. See Holt Atherton Industries, Inc. v.
Heine, 835 S.W.2d 80, 83 (Tex. 1992). As long as there is some evidence of a substantive and
probative character to support the court's decision, no abuse of discretion occurs.


 Holley v.
Holley, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). 
          The relevant evidence established that David expended at least $14,500 of his separate
property in satisfaction of the Honda note. The record establishes that the first two Hondas were
purchased before marriage and the third after marriage. Therefore, the first two would be
separate, and the third would be presumptively community property. See Tex. Fam. Code Ann.
§ 5.01(a), (b). Payment from community funds on the third car cannot give rise to a claim for
reimbursement. See Vallone, 644 S.W.2d at 459.
          There is no evidence of the amount of community funds that Jane contends was paid on the
separate-property portion of the Honda note. We do not know, for example, the amount of the
original note, the purchase price of any of the cars, or the number of payments David made on the
note before marriage, but the evidence established that David paid at least $14,500 to reduce the
Honda note. To support the court's judgment, and in absence of a finding, we will imply a finding
that the $14,500 payment from David's separate property on the Honda note went solely toward
the community car. See Holt Atherton, 835 S.W.2d at 83. 
          Considering all facts and circumstances, the court could have found that reducing the
potential community claim for reimbursement by $14,500 was fair and equitable. See Penick, 783
S.W.2d at 197. Because there was evidence, both substantive and probative, to support that
action, we find no abuse of discretion. See Holley, 864 S.W.2d at 706.
Jane's Other Claims
          Jane's contention, that David unfairly paid his separate debt instead of the community's
income-tax debt, cannot be properly characterized as a claim for reimbursement because he used
separate property funds to benefit his separate estate. See Vallone, 644 S.W.2d at 459 (noting that
a claim for reimbursement arises when one marital estate benefits another estate without itself
receiving some benefit). David's gifts to his son from community funds, although potentially
giving rise to a claim for constructive fraud, do not give rise to a claim for reimbursement. See
id.; Fanning, 828 S.W.2d at 148.
          We overrule point four as to Jane's claims concerning the payment of his separate debt
rather than the tax debt and the gift to his son, but we will assume that the court recognized a
$62,156 community claim for reimbursement. We further assume that the court made implied
findings that David's separate property payment of $14,500 on the Honda note offset the $62,156
community claim for reimbursement, leaving a net community claim for reimbursement of
$47,556. 
 DISPROPORTIONATE SHARE
          Although the court granted, as part of its division of the community property, a judgment
for Jane against David in the amount of $15,000, she complains of the court's division, or failure
to divide, a number of community assets. She maintains that David's practice owned accounts
receivable in the amount of $42,000


 and that the value of his interest in his separate-property
pension plan, profit sharing, and IRA increased during the marriage by $44,866. She contends
that the court did not award her at least one-half of those community assets, and that such failure
was error. We disagree. 
          The court has broad discretion in dividing community property, and we presume that it
exercised its discretion properly. See Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981). The test
for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action, but whether the court acted arbitrarily or
unreasonably. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985),
cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
          To complain on appeal of a court's division of the community estate, a party must have
produced evidence of the value of community assets to provide the trial judge with a basis on
which to make the division. One complaining of the court's division of the community property
must be able to demonstrate from the evidence that the decision arrived at is so unjust and unfair
as to constitute an abuse of discretion. LeBlanc v. LeBlanc, 761 S.W.2d 450, 453 (Tex.
App.—Corpus Christi 1988), writ denied per curium, 778 S.W.2d 865 (Tex. 1989). 
          Jane cannot show that the division was, in fact, disproportionate. Although David filed
an inventory and appraisal of assets in his possession, Jane did not provide evidence of the value
of a number of items to the trial court. She provided evidence of the value of David's various
retirement plans and the value of his office's accounts receivable. But she failed to value a number
of assets in her possession, including a 1989 Toyota Tercel, various home furnishings and
appliances, her teacher retirement, interest on her separate accounts, as well as other items.


 
Because she failed to provide evidence of such values, she may not now complain of the court's
lack of information. See id. 
          Assuming that the court did have values for the majority of the larger community assets
and debts, and assuming the court made its division based solely on those values, we find no abuse
of discretion in the court's division. The court found that David's Money Purchase Pension Plan,
Profit Sharing Plan, and IRA increased by the following amounts during his marriage to Jane, and
also found that David's business owned accounts receivable as listed below. Further, from the
court's findings relevant to Jane's reimbursement claims, we will imply a finding that the
community had a right of reimbursement in the amount listed below.
               Increase in David's Money Purchase Pension Plan                                 $32,185.16
 Increase in David's Profit Sharing Plan $11,581.02
               Increase in David's Individual Retirement Account                                 $ 1,100.00
                Business Accounts Receivable                                         $15,355.00
               Community Claim for Reimbursement                                   $47,656.00
               TOTAL KNOWN VALUE OF COMMUNITY ESTATE ASSETS:  $92,522.18
          Although there were no values for a number of the debts of the community, including
Jane's Toyota and various credits cards, the evidence establishes that the community owed unpaid
income taxes of at least $59,000.


 Assuming that the tax obligation is the only community debt,
after offsetting the assets and liabilities of the community, the court could have found, impliedly,
that the value of the community at the time of divorce equalled approximately $33,522.18.



          The court awarded Jane a judgment for $15,000 against David, and did not order her to
assume any portion of the tax debt. Thus, using this approach, Jane received $1,761.09 less than
one-half of the community estate.


 However, the court need not divide the property equally, but
only in a just and right equitable manner. See Tex. Fam. Code Ann. § 3.63 (Vernon 1993);
Murff, 615 S.W.2d at 698-99. We cannot say from the record before us that the court acted
arbitrarily or unreasonably in its division of the community estate. See Downer, 701 S.W.2d at
241-42.
          Point five is overruled, and the judgment is affirmed.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 26, 1995
Do not publish