## FITZGERALD MOOR v. SUSAN MOOR.

### Decided June 26, 1900.

**1. Rescission of Partition Contract—Tendering Back Property Received.**

In an action by a divorced wife to set aside a partition of the community property made by agreement between herself and the husband, an objection that she did not offer to refund the money she had received in the partition, nor to surrender for cancellation the deed of the property executed to her then by the husband, is one that can not be raised for the first time after judgment, nor before judgment, by general demurrer, but only by special exception to the petition.

**2. Same—Partition of Community Property.**

In such case it was only necessary, as to the benefits received under the partition agreement and settlement, that the wife should manifest in her petition a willingness to restore the property she had so received, or to have it considered by the court in making the further partition of the community property for which she prayed.

**3. Same—Case Warranting Rescission for Fraud of the Husband.**

For case of fraud and concealment by the husband held to warrant a judgment setting aside an agreement between himself and the wife partitioning the community property, see the opinion.

**4. Same—Contract Between Husband and Wife—Presumption of Fraud.**

An agreement between husband and wife partitioning the community property between them is not presumed in law to be fraudulent from the bare fact that they are husband and wife, but his superior knowledge of the property, its amount and value, and his consequent ability to deceive her in regard thereto, will be considered, in connection with all the circumstances, in determining whether the agreement should be set aside for fraud.

**5. Same—Community Property—Wife's Right to One-Half.**

The statutory provision that the court, in pronouncing a decree of divorce, "shall also decree and order a division of the estate of the parties in such way as the court shall deem just and right, having due regard to the rights of each party and their children," does not limit the wife's legal right to one-half the community property to cases wherein the community is dissolved by the death of the husband, or deprive her of her right to an equal share of such property where there has been a divorce without any decree as to the property. Articles 2980, 2968, 2969, Revised Statutes, construed.

**6. Same—Wife's Misconduct—Husband Estopped.**

Where the husband paid the wife's attorney fees in order to have her bring a suit for divorce in which it was established that he was guilty of such outrages toward her as to render their living together insupportable, he will not be heard, in an action brought by her after the divorce for the partition of the community property, to urge misconduct on her part as a wife, prior to the divorce, as a ground for depriving her of an equal share of such property.

**7. Community Property—Increase of Cattle—Property Commingled by Husband.**

A husband owned at marriage a stock of cattle valued at $36,000, which, after three years, with the increase thereof, he sold for $82,000, and invested the proceeds in other cattle which were subsequently sold for $38,000,—his separate property in the cattle being so commingled with the community property (increase thereof) at the time of the last sale as to prevent his cattle from being identified. With the larger part of the $38,000 he bought real estate, taking the deed in his own name, with recital therein that it was his separate property. Held, that under such facts the presumption of separate property arising from such recital in the deed was rebutted, and the status of the property established as that of community estate.

**8. Same—Making Value of Husband's Separate Property a Charge Against the Community Estate.**

In an action for partition of the community property bought by the wife after divorce, the husband can not complain of the court's failure to make the value of the separate property he owned at marriage a charge upon the community estate, where he did not ask in his pleadings, or seek at the trial, to have this done; and it is strongly intimated that under no circumstances would such a course be authorized under the Texas law of marital rights as to property.

**9. Decree of Partition—Description of Property in Pleadings.**

Objection to a decree of partition upon the ground that the property is not sufficiently described in plaintiff's petition, is one that should have been made below by exception to the pleading.

**10. Same.**

Where the wife, suing for a partition of the community property, is not sufficiently acquainted with it to describe it in her petition, and the husband refuses to answer interrogatories propounded before the trial by which it is sought to obtain a proper description, the trial court can ascertain the description and embody it in the decree.

**11. Partition of Community Real Estate Situated Out of Texas.**

The court had not jurisdiction, as to real estate situated out of Texas, to adjudge that it was community estate and decree its partition.

APPEAL from El Paso. Tried below before Hon. A. M. WALTHALL.

*Millard Patterson* and *C. N. Buckler*, for appellant.

*T. A. Falvey* and *Waters Davis*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant on the 7th day of February, 1900. She alleged as a cause of action that on the 3d day of October, 1899, she and appellant were husband and wife, and that during their marriage they had accumulated a large community estate consisting of real and personal property described in her petition, and that on the day above mentioned she procured a divorce in the District Court of El Paso County, Texas, annulling the bonds of matrimony theretofore existing between herself and appellant; that on the 3d day of October, 1899, prior to granting the divorce, and while she and appellant were still husband and wife, appellant fraudulently induced her to enter into a pretended agreement and partition of their community property; that said agreement was fraudulent and void, because entered into between husband and wife, and was procured by the appellant by fraudulent representations and concealments as to the value of his estate; that appellant falsely stated to her and induced her to believe that by a suit she could procure no part of their community property, for he had fixed the same so it could not be reached by her; that in pursuance of said agreement, made prior to the decree of divorce, she made a deed to appellant conveying all her community interest in the estate in consideration of $3600 in money and certain real estate, which she alleged appellant had conveyed to her by his deed. She prayed that she be adjudged one-half interest in and to the community property of appellant and herself, taking into consideration the property received by her; that her deed to appellant be adjudged null and void, and that said community property be partitioned between plaintiff and defendant, and that defendant be required to execute proper conveyances to plaintiff for her said community estate, and that a lien be fixed on appellant's interest in said community estate until such conveyance as will vest full title in her be executed by appellant.

Besides interposing a general demurrer and general denial to appellee's petition, the appellant specially answered setting up an agreement between himself and appellee, which he alleged was made and consummated after the divorce was granted, and that in pursuance of the agreement he paid appellee $3600 in cash and deeded to her certain valuable real estate in the county of El Paso, Texas, worth $6000, after the divorce was granted. That she received said cash and deed to said property and made and delivered to appellant a deed to her interest in the community property; that this was done on her part freely, voluntarily, and without any fraud or concealment on the part of appellant; that she accepted said deed and $3600 in money from him and entered

into the real property and enjoyed the use and benefits and revenues from the same, and occupied the real estate for her separate benefit and appropriated to her use said $3600; that said settlement was fair and equitable, and at the time the divorce was granted the community estate of herself and appellant was indebted in the sum of $31,000, and at the time of his marriage with her, he owned a large estate valued at from $60,000 to $80,000.

By supplemental petition the appellee admitted that she had collected the rent on the real property mentioned in appellant's answer, and had appropriated it to her support. She offered to make a full statement of the amounts received and collected on account of said property, and asked that it be taken into consideration in partitioning their community estate. She also alleged that the appellant, prior and subsequent to the 3d day of October, 1899, had collected all rents due on the community property, amounting to a considerable sum, and appropriated the sum to his use and benefit. She asked that he be required to state the amount of rent so collected by him, and that the same also be taken into consideration in the partition. She denied that he had any separate property at the time of their marriage, but averred that if he had any such property, it consisted of live stock, none of which is in existence; that he had sold the original stock and increase without keeping an account of the value of the original or the increase, and has so commingled the sale that none of the property now owned by him is his separate property.

The case was tried by the court without a jury, and the trial resulted in a judgment to the effect that all the property owned at the time of the divorce by appellant was community property, and that the agreement entered into between him and the appellee was void. Whereupon the court entered a decree canceling the deed from appellant to appellee, and also canceling the conveyance from her to him, and decreed that all of said estate should be partitioned equally between the parties, subject to the payment of all debts, the amounts of which were found by the court, as was also the value of the property, and commissioners were appointed to make the partition. From which judgment or decree this appeal is prosecuted.

It is claimed by the first assignment of error that the judgment is not supported by the evidence, because it is undisputed that appellee paid appellant in settlement $3600 cash and conveyed her certain real property of the value of $6000, and that she used the money and took possession of the property and has not offered to refund the money, surrender the deed of conveyance for cancellation, nor possession of the property. The objection thus made to the judgment should have been made by special exceptions to appellee's petition, for the failure of a party seeking a rescission of a contract to tender the other party the benefits received under it can not be raised by a general demurrer (Williams v. Wright, 20 Texas, 503; Moor v. Cross, 26 Southwestern Reporter, 123), nor for the first time after a judgment in the case has

been rendered. In regard to the benefits received by the appellee under the contract, it was only necessary for her to manifest by her pleadings a willingness to restore them, or have them considered by the court in the partition of the community effects. This she did, and they were taken into account by the court in determining the value of and dividing the property. The result reached is the same that would have been attained had she tendered the money received by her to the appellant, and brought into court the deed made by him for cancellation.

It is urged by appellant in his second assignment of error that the judgment of the court is contrary to the evidence, in (1) that the record discloses no evidence that appellee was induced to enter into the contract of settlement with her husband by fraud, concealment, misrepresentation, or undue influence exerted by him or anyone else; and (2) that the settlement is shown by the evidence to be fair and equitable.

The trial court found as facts: That prior to the divorce and at the time of the agreement to partition the community property all the community property belonging to plaintiff and defendant was in the possession of the latter, and was then worth $116,596; that plaintiff was at the time, and when the agreement was executed, ignorant of the amount, location, and value of the property belonging to the community estate, and defendant did not inform her as to the same; that defendant stated to plaintiff and caused her to believe that he had all the property fixed so that it could not be reached or obtained by her, and also falsely stated to plaintiff and induced her to believe that the amount of money and property received by her in the settlement was equal to one-half of the community property owned at the time; that plaintiff received $3600 and lots of the value of $6000 under the agreement; that plaintiff received no consideration from the defendant for the excess of property deeded by her to defendant, and to which she was entitled over and above the amount given her by the defendant; that the division of the community property by the parties was not fair, equal, and equitable; and that the amount received by plaintiff was but a small part of the community property to which she was entitled.

The evidence disclosed by the record is, in our opinion, reasonably sufficient to sustain these findings; and we are not prepared to say, under all the facts and circumstances, that the agreement and settlement is not in the eye of the law fraudulent, and should not be rescinded. Upon this point we do not wish to be understood as questioning the proposition that where a husband and wife actually separate, intending the separation shall be permanent, a division of their community property, made to separate their interests, which gives to each one-half, if fairly consummated, is effectual. Batla v. Batla, 51 S. W. Rep., 665. Nor do we think that an agreement between husband and wife who have actually separated, intending the separation shall be permanent, to divide their community estate is, from the nature of their marital relation, prima facie void as to the wife, and throws upon the husband the burden of proving that the agreement is fair and equitable. In

our opinion, the validity of such an agreement should be determined by all the facts, circumstances, and conditions surrounding the transactions and affecting the parties. If their relation is such as would probably enable the husband, from his knowledge and the condition of the property, to deceive his wife as to its value, or take advantage of her condition, and he induces her to enter into an agreement to divide the estate which she seeks to avoid on the ground of fraud, then his relation to her as husband should be considered as any other fact in connection with the circumstances surrounding the transaction in determining its character. But there is no presumption in law that the agreement is fraudulent from the bare fact that the parties are husband and wife.

It is contended by appellant that because Revised Statutes, article 2980, provides that, "The court pronouncing a decree of divorce from the bonds of matrimony shall also decree and order a division of the estate of the parties in such a way as to the court shall be just and right, having due regard to the rights of each party and their children," etc., it is only in case of death of the husband that the wife is entitled, as a matter of law, to one-half of the community estate. The law is that all property acquired either by the husband and wife during their marriage, except that which is acquired by gift, devise, or descent, shall be deemed their common property; and all effects which they possess at the time the marriage may be *dissolved* shall be regarded as common gains unless the contrary be satisfactorily proved. Rev. Stats., arts. 2968, 2969. The presumption which obtains when the marriage is dissolved, that property found in possession of either spouse belongs to the community, is not limited to a dissolution of the marriage by death, but applies equally to its dissolution by divorce. McCelvey v. Cryer, 37 S. W. Rep., 175. The effect of a dissolution of marriage by a divorce, as to community property is practically the same as the death of one of the parties. McCaffery v. Benson, 40 L. Ann., 10; 3 S. W. Rep., 393. The power given the court by article 2980, upon pronouncing a decree of divorce to order a division of the estate of the parties in such a way as to it shall seem just and right, does not alter the presumption as to community property. It is given that the court may, in granting the divorce, having due regard to the rights of each party, do justice between them.

It may be that, in dividing the property at the time the decree is granted, the court may take into consideration the wrong inflicted upon the wife by the cause for divorce, and not send away an injured woman with little save her mental sufferings, blasted hopes, and ruined life, but may give her compensation for her wrongs, beyond her interest in the community property. And it may be that a guilty wife, who has brought shame upon her husband and disgrace upon his family, may be given less than her share of the estate. There was no division of the property in the divorce proceedings, in which it may have been proper to consider these matters. But it is urged by appellant that

they can be considered now. He seems to forget that the divorce was decreed on account of wrongs inflicted by him upon his wife, and that he procured the service of counsel and paid them for bringing the suit and establishing that he was guilty of such cruel treatment and outrages towards her as render their living together insupportable. In the face of this, he will not now be heard to say that his wife's conduct was such during their marriage as should deprive her of an equal share of the community property.

There is testimony to the effect that when the parties married appellee had no property of her own, and that the appellant owned a stock of cattle approximating 1800 head; that about three years after the marriage he sold the cattle and their increase, the stock then being estimated at about 3000 head, for $82,000. That he invested the proceeds of sale in cattle in the Sacramento Mountains, New Mexico, and about three years after the investment was made, sold the cattle for $38,000—at a loss of $44,000. With a part of the proceeds of this sale he bought certain real estate situated in the city of El Paso, Texas, and took the deeds in his name as his separate property. His contention that this property is his separate estate can not be maintained. The increase of the original stock of cattle which he sold for $82,000 was community property. It does not appear what it was, and its value is not shown, nor does it appear what number of the original stock of cattle, if any, was on hand when the sale was made. From this it appears that his separate and the community property was so commingled when he sold the cattle as to prevent either from being identified, and rendered appellant unable to show that the real estate in El Paso was purchased with his separate funds. Under these facts any presumption that might obtain from the recital in the deeds that it is his separate property is rebutted, and its status as community estate is established. Hence the court did not err in holding that all the property on hand at the time of the dissolution of the marriage was community. Jones v. Epperson, 69 Texas, 586.

The fourth assignment of error complains that the court erred in not charging the community estate of appellant and appellee with the value of the separate estate which the appellant owned at the time of their marriage. The appellant does not in his pleadings ask that the community estate be charged with the value of the separate property he owned at the time of his marriage. The facts alleged by him are not sufficient to show that he is entitled to have such charge made. And it does not appear from the record that he sought upon the trial to have the court find the value of such separate property and make it a charge upon the community. His effort there was to show that his separate funds were used to make up in part the purchase price of the property on hand when the marriage was dissolved, and to avail himself of the principle that, when separate funds are used to make up in part the purchase price, the community furnishing the remainder, the property so acquired will be held in a sort of tenancy in common between the spouse furnishing the separate funds and the community, in proportion to the amount of consideration furnished by each. In Louisiana, owing to textual pro-

visions of its code, a different rule obtains from the one in this State. There the spouse, whose separate funds are used in making the acquisition, is recompensed by being recognized as a creditor of the community to the extent of his separate funds used; but the property itself acquired by purchase falls into the community. 6 Am. and Eng. Enc. of Law, 2 ed., 303. Hence, it is held in Louisiana that the husband may become a creditor of the community for an amount of his separate funds actually invested by him for the benefit of the community, and at the liquidation thereof he is entitled to be reimbursed. Heirs of Gee v. Thompson, 41 La. Ann., 348, 6 So. Rep., 548, and cases there cited; Ballinger Commun. Prop., sec. 144; Rogers, Dom. Rel., sec. 337.

In Robb v. Robb, 41 Southwestern Reporter, 92, it is held by the Court of Civil Appeals of the First District that "When the husband mingles his separate estate with the community beyond identification, he can not charge the community with the value of the property so mingled; and that all property in possession of the husband and wife is presumed to be community property, and this presumption must obtain until it is shown unmistakably that the property, or some part of it, was owned by one of the spouses previous to and at the time of the marriage, or was acquired subsequently by one of them by gift or devise or inheritance, or purchased with the separate money or property of one of them."

Until the question as to whether the husband who has mingled his separate property with the community beyond identification is, upon the dissolution of marriage, entitled to have the community charged with its value, is brought before this court in a way that requires its decision, we refrain from passing upon it. But it may not be improper for the writer to remark here that, if the husband is entitled to such credit, it is strange that in all the marriages that have been dissolved by death and divorce in this State, such a right seems never to have been accorded him.

The objection made here to the decree of partition upon the ground that the property is not sufficiently described in appellee's petition, is one that should have been made by exception to her pleadings. Where, as in this case, the wife is not sufficiently acquainted with the property to describe it in her petition, and her husband refuses to answer interrogatories propounded before the trial by which it is sought to obtain a description of the property, the trial court can ascertain the description and embody it in the decree.

We think that as to the real estate outside of the State of Texas, the court had no jurisdiction to adjudge that it is community property and decree its partition between the parties. 17 Am. and Eng. Enc. of Law, 708; Johnson v. Kimbro, 75 Am. Dec., 781. So much of the judgment as adjudicates the rights of the parties to lands outside of this State and decrees their partition is reversed and annulled, and the judgment in all other respects is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

Before deciding this case we earnestly endeavored to give it the careful and thorough investigation and consideration that its magnitude and importance to the parties at interest demanded, and have given this motion the same careful consideration, and have found no reason for in any material respect changing our original opinion.

The contention made by appellant in his brief that the lot in El Paso, known as the English Kitchen, and other property, the deeds to which recite that it was paid for with his separate means, is his separate property, is reiterated in this motion, and the assertion made that the uncontroverted evidence shows that such property was paid for with his separate funds. If such was the uncontroverted evidence, it would follow that the trial court erred in adjudging it community property, and that we likewise erred in affirming its judgment in that regard. But we are satisfied that the conclusion can not be drawn from the uncontroverted testimony that the property was paid for by the separate means of Fitzgerald Moor, and that such uncontroverted testimony shows beyond cavil that the property was purchased and paid for with community funds, and that the law arising from the facts stamps it as community property. Let it be conceded, as is contended by appellant, that the testimony shows beyond any sort of doubt that at the date of his marriage he owned separate estate worth at least $36,000. This estate the evidence shows consisted of a stock of cattle which was managed and controlled by appellant for the period of three years after his marriage, and then was, with its increase, sold for $82,000. What the increase was in number is not shown by the testimony. It may have been from the evidence as much as 50 per cent per annum from the time of marriage to the time the property was sold. Conceding, which was not shown by the evidence, that all of the original stock was on hand at the time of the sale, still a large per cent of the cattle must, when the stock was sold, have been the increase, and consequently community property. The appellant only contends that $36,000 of the proceeds of sale was his separate property, and admits that the balance, $46,000, was community. Had this $36,000 been then invested by appellant in the property which he now contends was purchased with his separate funds, it might with some plausibility be asserted that the subject of the investment is his separate property. But it was not so invested. The proceeds of the sale of the entire stock was invested in cattle in the Sacramento Mountains, New Mexico, and about three years after this investment was made the cattle were sold for $38,000—at a loss of $44,000. When the investment in the Sacramento Mountain cattle was made, the community funds were mingled in such a way with appellant's separate funds so as to be inseparable, and therefore became community property. But he contends that the $38,000 received for the sale of the Sacramento Mountain cattle, with which he purchased the English Kitchen for $25,500, and made $8000 worth of improvements thereon, and the other property in which the deeds to him recite payment with his sepa-

rate funds, is all his separate property. Under this contention the entire interest of the community invested in the Sacramento Mountain cattle would be lost, and all which he claims as his separate investment in the stock would be saved to him, leaving to him the value of the property he had when he was married, and the community nothing for the investment. This demonstrates the absolute absurdity of appellant's contention, and leaves no escape from the conclusion that the investment of the proceeds of the sale of the Sacramento Mountain cattle is not his separate property.

The appellant, not being able to show that the property claimed as his separate estate was purchased with his separate funds, and it having been acquired during his marriage to the appellee, it must be regarded as their community estate, and subject to partition between them upon the dissolution of their marriage. Not being able to show that any of the property on hand when the marriage was dissolved was his separate estate, can the appellant charge the community with the property owned by him at the date of their marriage? It may be that this question is properly raised by the pleadings and evidence in this case, and it will be conceded that it is. As was intimated in our original opinion, we know of no case in this State where it has been held that, upon the dissolution of marriage, the husband can charge the community estate with the value of separate property that he has so commingled with that of the community as to be unable to identify or trace it in any specific part of the community property. When he can show that his separate funds were used to make up in part the purchase price of any specific piece of property on hand when the marriage was dissolved, and that the community furnished the remainder, he is entitled in this State to an interest in such property in proportion to the ratio his separate funds bears to the entire purchase price. In other words, as to that property he is regarded as a tenant in common with the community. But in Louisiana property purchased during marriage with a part of the separate funds of the husband, and the balance with funds of the community, is not so regarded, but is held to be community property, and he is there recompensed by being recognized as a creditor of the community to the extent of his separate funds used. Hence, as we said in our original opinion, it is held in Louisiana that the husband may become a creditor of the community for an amount of his separate funds actually invested by him for the benefit of the community, and at the liquidation thereof he is entitled to be reimbursed. As, in this State, the husband is permitted to claim an interest in property into which he can trace his separate funds invested in its acquisition, the reason of the rule of Louisiana does not obtain here. Our courts have never held that the husband who has so mingled his separate property with that of the community as to be unable to identify it, can at the dissolution of the marriage charge the community with its value. Our law gives him the sole management and control of his and his wife's separate property, as well as that of the community, and the only protection which the wife has against his mingling her separate property with the community estate so that it can

not be identified, is to charge the community estate with its value. This is done, because from the nature of the marriage relation she can not protect herself against the effect which may arise from her husband's management and control of her separate property, and the law therefore protects her by charging the community estate with the value of her separate property commingled with it. But the husband, having the control and management of his separate property, as well as that of the community, is in an attitude to protect himself, and can so manage the property, if he chooses, as to keep his property separate or so as to be able to identify it from that of the community. Our law governing community and separate property is complicated enough as it is, and to engraft upon it the principle here contended for by appellant would bring about untold complications, the effect of which can not be forseen.

The motion is overruled.

<em>Overruled.</em>

Writ of error refused.