**Dorothy Gray HORLOCK, Appellant,**

v.

**Roy M. HORLOCK, Appellee.**

**No. 1158.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Dec. 31, 1975.

Rehearing Denied Feb. 25, 1976.

Robert J. Piro, Baker & Botts, Eugene L. Smith, Houston, for appellant.

Bryan W. Scott, Michael D. Stewart, Urban, Coolidge, Pennington & Scott, Houston, for appellee.

COULSON, Justice.

This is an appeal from a final decree of divorce. The principal issue is whether the court's property division is just and right.

Dorothy Gray Horlock, appellant, thirty-five years of age, and Roy M. Horlock, appellee, forty-one years of age, were married on November 22, 1966. Dorothy Gray Horlock had not been previously married. Roy M. Horlock was married to Margaret Boudreaux Horlock until her death on August 1, 1965. She bequeathed her entire estate to Roy M. Horlock. Three daughters were born to Margaret Boudreaux Horlock and Roy M. Horlock. One child, a son, was born to Dorothy Gray Horlock and Roy M. Horlock.

The parties separated on or about July 1, 1973. A final decree granting the appellant a divorce was entered on January 6, 1975. Custody of the son was granted to appellant. Appellee was ordered to pay child support of $750 per month, to pay for his son's medical hospitalization, to pay his son's medical and dental expenses in excess of $100 per year, to pay all of his son's orthodontic expenses, and to pay his son's private school tuition. Appellee was granted visitation rights with his son at specified times.

The divorce decree ordered a division of the Horlocks' estate and established responsibility for the discharge of debts and liabilities. The appellant's attorney was awarded a judgment against appellee of $15,000 for legal services rendered on appellant's behalf. All costs were adjudged against the appellee. Dorothy Horlock has brought this appeal.

Appellant's points of error concern four major issues. First, the appellant contends that certain gifts made during their marriage by Roy M. Horlock to his three daughters constituted fraud on the appellant's community estate. Second, the appellant challenges the trial court's determination that the separate estate of the appellee was entitled to reimbursement from the community estate for the proceeds from the sale of property owned by appellee prior to the date of the marriage (these proceeds having become totally comingled with the community estate of the parties). Third, the appellant contends that the trial court abused its discretion in the division of the parties' property because the division was not fair and equitable. Fourth, the appellant contends that the trial court erroneously determined that certain shares of capital stock in Collegiate Services Corporation were a part of the community property of the parties; her argument being that the stock was his separate property.

## THE GIFTS TO THE CHILDREN

During the marriage, the appellee made gifts to his mother, who was blind and confined to a nursing home. He also made gifts to his three daughters and to his son. On appeal, the appellant has challenged only the gifts to the three daughters as being a fraud on her rights. The gifts ranged in value from $3,000 to $6,000 per year plus an amount equal to the lifetime federal gift tax exclusion for both the appellee and the appellant. The total value of the gifts to the three daughters was $131,517.

Appellant's contention that community property was used in making the gifts is not challenged by appellee. He did not tell the appellant that he was making the gifts to his three daughters, and admitted that the appellant would have strenuously protested had she known of the gifts. In 1972, appellee filed a gift tax return on which the appellant's name appeared. A third party signed the appellant's name to the return at the request of the appellee, who acted without the knowledge and consent of the appellant. The appellee and his accountant testified that the resulting income tax advantage generated by the gifts to his children was the motivation for the gifts. The

appellee testified that in making the gifts he intended no deprivation of the appellant's rights. The trial court found that the appellee had not perpetrated an actual or constructive fraud upon the appellant by making the gifts to his three daughters.

■ To sustain a cause of action for actual fraud, the appellant has the burden of showing that the gifts were made with the primary purpose of depriving her from having the use and enjoyment of the assets comprising the gifts. Actual fraud involves dishonesty of purpose or intent to deceive. *Land v. Marshall*, 426 S.W.2d 841, 846 (Tex. Sup.1968); *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.Sup.1964). Here, the appellant has failed to sustain her burden of showing an actual fraud. The evidence in support of appellant's position is conflicting. The appellee admitted that he made the gifts knowing that the appellant would not approve of them, however, there is ample evidence that the appellee's intention in making the gifts was to benefit both the community estate and the parties' individual estates upon the death of each or both of them.

■ The trial court found that at the time of the marriage, appellee owned property having a net value of approximately $1,000,000. Most, if not all of the community estate, would be classified as the special community of the husband under Texas Family Code Annotated, § 5.22. There may be a fraud on a spouse's community interest where the special community property of the other spouse is involved. However, the fact that it is a spouse's special community is important in considering the rights of disposition which accrue to that spouse given the special nature of that community property. It is not necessary that one spouse approve or agree with the dispositions made by the other spouse of that other spouse's special community property. *Murphy v. Metropolitan Life Insurance Company*, 498 S.W.2d 278 (Tex.Civ.App.— Houston [14th Dist.] 1973, writ ref'd n. r. e.). The single fact that the appellee inten-

tionally prevented the appellant from finding out about the gifts which he made to his daughters does not constitute actual fraud.

■ In the instance of constructive fraud, a gift of one spouse's share of the community property will be set aside where the gift is unfair to that spouse. It was the appellee's burden to prove that the gifts were fair. *Murphy v. Metropolitan Life Ins. Co., supra; Givens v. Girard Life Insurance Company of America*, 480 S.W.2d 421 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.).

■ In considering the wife's claim of a constructive fraud against her share of the community property the courts have considered three primary factors. Those factors are the size of the gift in relation to the total size of the community estate, the adequacy of the estate remaining to support the wife in spite of the gift, and the relationship of the donor to the donee. *Givens v. Girard Life Insurance Company of America, supra; Hartman v. Crain*, 398 S.W.2d 387 (Tex.Civ.App.—Houston 1966, no writ).

Significant to the disposition of the issue of constructive fraud in this case are the findings of fact filed by the trial court. Among other things, the trial court found that Roy M. Horlock had three daughters by his prior marriage. At the time of the parties' separation the girls' ages were fourteen, seventeen and eighteen. The daughters inherited nothing from their deceased mother, whose will named Roy M. Horlock as her sole beneficiary of her substantial estate. The trial court further found that during their marriage, Dorothy Gray Horlock and Roy M. Horlock quarreled over Dorothy Gray Horlock's demands that Roy M. Horlock's daughters not share with her in his properties. She also demanded an interest in the properties owned by Roy M. Horlock prior to the marriage.

■ Roy M. Horlock's daughters are the natural objects of his bounty. The total

value of the gifts to the daughters was $131,517. The trial court found as a fact that the appellee at the time of the marriage owned properties having a net value of approximately $1,000,000, and that at the time of the dissolution of the marriage appellant and appellee owned properties having a net value of approximately $3,000,000 to $4,000,000. It is evident that throughout the marriage the value of the estate was in excess of $1,000,000. Assuming the lower value of $1,000,000, the appellee's gifts to his three daughters constituted no more than 13.1517% of the total estate. The remaining minimum figure of approximately $870,000 in community funds would be sufficient to provide for the needs of the wife. The foregoing facts and considerations coupled with the tax advantages sought by the appellee removes the gifts by the appellee to his daughters from the pale of a constructive fraud upon the wife's portion of the community estate.

The appellant's first four points of error are overruled.

## THE RIGHT OF THE HUSBAND'S SEPARATE ESTATE TO REIMBURSEMENT FROM THE COMMUNITY ESTATE

Appellant's points of error eight through eleven challenge the trial court's conclusions of law that the appellee is entitled to reimbursement for the use of his separate funds to enhance, improve, and increase the value of the community estate. The trial court concluded as a matter of law that regardless of appellee's equitable right of reimbursement, the property division made in the judgment is fair and equitable.

As a part of the findings of fact, the trial court found that at the time of the marriage the appellee owned properties having a net value of approximately $1,000,000. Subsequent to the marriage the appellee sold separate property real estate for approximately $700,000. The appellee also received payments in excess of $200,000 under certain contracts which had been entered into prior to the marriage and which the appellee had already performed. The total value of the separate property sold and collected subsequent to the marriage was $921,000. The appellee, in his role as manager of his separate estate and the parties' community estate, placed the proceeds of these sales into an investment account at the First City National Bank of Houston. The account existed prior to marriage and had been in use by the appellee, who was engaged in the real estate business. He had become established as a successful businessman in various phases of the building and apartment businesses, including construction, ownership and management.

The appellee comingled the proceeds of the sale of his separate property with the community property of the parties. The appellee admitted at trial and admits in his brief that the proceeds of the sale of his separate property have become completely comingled with the community estate. Appellee made no attempt at trial to trace the use of the proceeds of the sale of his separate property into any other transactions. The trial court determined in its conclusions of law that the appellee was entitled to reimbursement by reason of using his separate funds to enhance, improve and increase the value of the community estate. The trial court did not determine the amount of such reimbursement; however, the court did find as a fact that during the marriage specific properties owned by the appellee prior to the marriage were sold for a total sum in excess of $900,000, which was placed in the investment account at First City National Bank of Houston and thereafter used for the enhancement of the community estate.

The appellant requested additional findings of fact to compel the trial judge to specifically determine the amount of reimbursement to which the appellee's separate estate was entitled. However, the trial judge refused to reply to that request.

It is the appellant's position that the appellee is not entitled to reimbursement to

his separate estate. The appellant further contends that, although the appellee may have utilized the proceeds of the sale of his separate property for the benefit of the community estate, the appellee allowed his separate property to become completely comingled with the community estate to a point at which segregation of the two estates is impossible. Appellant argues that the application of the doctrine of reimbursement is precluded by Texas Family Code Annotated § 5.02, which states:

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.

The appellant contends that neither of the two recognized methods of escaping the effect of the presumption of community property, tracing or reimbursement, is applicable in this case. Here, tracing is impossible. Appellant contends that the appellee is also unable to rely upon reimbursement because the appellee cannot show that the specific use to which the proceeds of the sales of his separate property were put benefited the community. Appellant argues that the appellee cannot rely on the gross assumption that the $921,000 was used to benefit the community, in the absence of some direct evidence of how those funds were spent. It is the appellant's position that at the dissolution of a marriage, a spouse must trace and clearly identify separate property in order to discharge the burden of satisfactorily proving that such property is not community property. She relies on *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. Sup.1965); *Moor v. Moor*, 24 Tex.Civ.App. 150, 255 S.W. 231 (San Antonio 1900, no writ); and *Ervin v. Ervin*, 60 Tex.Civ.App. 537, 128 S.W. 1139 (1910, writ dism'd).

The cases cited by the appellant are not directly in point. In *Tarver* the parties challenging the trial court's determination that certain properties were community in nature proceeded under the theory of constructive trust and sought to be awarded a one-half interest in the properties themselves. The issue of reimbursement was not raised. The challenging parties were

required to trace those funds held prior to the marriage into specific assets held at the dissolution of marriage in order to discharge their burden.

*Moor* is most frequently cited for the proposition that reimbursement will not be allowed when the husband comingles his separate estate with the community estate. *Moor* is discussed at length in a commentary by Professor Huie. Huie, *Commentary on the Community Property Laws of Texas*, 13 Tex.Rev.Civ.Stat.Ann. 25 (1960). *See also* Comment, 36 Texas Law Review 196 (1955); 6 St. Mary's Law Journal 234 (1974). In *Moor* the husband first sought to trace the assets from his separate estate to that which he had comingled with the community estate. His claim for reimbursement was apparently an alternative claim. In that context, the husband attempted to pass the entire loss of a business venture onto the community estate rather than accepting a proportionate share of the loss on his separate estate. It should be observed that the remedy of reimbursement is equitable in nature. Considering the situation presented in *Moor*, the court equitably refused to sustain the husband's contentions.

*Ervin* is an example of a large number of cases wherein the husband failed to raise the claim of reimbursement. The arguments of appellant on the issue of reimbursement are not persuasive. It should be kept in mind that in seeking reimbursement the appellee does not ask to share in the actual assets which have been determined to be community property. Rather, the appellee seeks to recover an amount substantially equal to the amount of capital which he brought into the marriage as separate property and which he utilized for the benefit of the community estate.

Since the latter 1940's, courts in Texas have acted favorable toward allowing reimbursement and in allowing the tracing of separate funds. For example, in *Hartman v. Hartman*, 253 S.W.2d 480 (Tex.Civ.App. 1952, no writ), the husband was awarded reimbursement of $30,000 as compensation

for the investment of his separate estate in the community business. The husband had entered into the marriage owning separate property valued at $37,794. He was engaged in the construction business and operated out of a single investment banking account. The evidence in *Hartman* showed that during the course of the marriage more than $200,000 passed through the bank account. The facts did not lend themselves to tracing, but the trial court did award reimbursement. *See also Schmidt v. Huppman*, 73 Tex. 112, 11 S.W. 175 (1889); *Farrow v. Farrow*, 238 S.W.2d 255 (Tex.Civ. App.—Austin 1951, no writ). For examples of a more liberal treatment of the tracing doctrine, see *Blumer v. Kallison*, 297 S.W.2d 898 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.); *Barrington v. Barrington*, 290 S.W.2d 297 (Tex.Civ.App.—Texarkana 1956, no writ). Another development in this area is exemplified by the case of *Sibley v. Sibley*, 286 S.W.2d 657 (Tex.Civ.App.—Dallas 1955, writ dism'd). *Sibley* stands for the proposition that where a bank account contains both community and separate monies, it is presumed that community monies are drawn out first.

■ Under these cases, the trial court was justified in awarding the husband a separate estate reimbursement. The husband's separate estate served as a strong foundation upon which the community's wealth was built. Throughout the marriage the husband utilized that foundation to provide for the appellant and to establish the $3,000,000 to $4,000,000 estate. Equity is well served by reimbursing him for that initial investment. In this case there is no question of fraud against the wife's estate, against the community, or against any third party creditor. One of these factors could shift the equities involved and preclude the appellee's recovery of reimbursement.

As a part of the appellant's argument on the question of reimbursement, complaint is made of the trial court's failure to make additional findings of fact and conclusions of law relative to the appellee's claim for reimbursement. The trial judge's reticence

to make such findings served only to cloud the issue in the case on appeal. In view of the position which we take on the issue of reimbursement, the trial court's decision not to make additional findings of fact was harmless error. The trial court did not make specific findings as to each asset claimed as a source of reimbursement. Because no such findings were requested by the appellant, it is unnecessary for us to discuss the status of each of the assets claimed by the appellee as separate property.

## THE DIVISION OF THE COMMUNITY ESTATE

Appellant's points of error 12 and 13 urge that the trial court's division of the community estate was so unfair and inequitable as to constitute an abuse of discretion.

■ The property division ordered by the court awarded to the appellant assets with a net value of $1,295,306. The appellee was awarded assets with a net value of $2,682,-023. However, the record demonstrates that the husband by virtue of his investments in Collegiate Services Corporation, was under a contingent liability of roughly $2,000,000. Further, the court's property division allocated one-half of the Collegiate Service Corporation stock to the appellant but did not obligate the appellant to service the debt incident to the stock. The court found that the Collegiate Service Corporation stock did not have a market value, but that it had future potential. The effect of the judgment was to award the appellant the right to receive the benefits of any increase in value of the Collegiate Service Corporation stock without any obligation to service the debt coupled with such ownership.

The community estate's debt structure was examined in great detail during the trial of the case. Most of the community's assets served as security for outstanding debts. Some of the debts were free of personal liability. By the terms of the judgment the appellee was made responsi-

ble for the majority of the debt. Many debts were evidenced by promissory notes bearing short term maturity dates. In order for the appellee to successfully refinance the short term obligation and to service the long term indebtedness, it was necessary for him to have greater liquidity than the appellant. When considering the debt status of the community estate, it is clear that the unequal division of the community estate was necessary in the interest of preserving the community assets. Such a consideration does not constitute an abuse of discretion. *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1951); *Waggener v. Waggener*, 460 S.W.2d 251 (Tex.Civ.App.—Dallas 1970, no writ); *Dorfman v. Dorfman*, 457 S.W.2d 417 (Tex.Civ.App.—Texarkana 1970, no writ). The appellant's points 12 and 13 are overruled.

Appellant's points 14 and 15 involve the value of a washateria business awarded to the appellant which the appellee claimed to be community property but which the trial court determined to be the appellee's separate property. The appellant valued the washateria business at $100,000, five times its net income. The appellee valued the washateria at approximately $5,000. On appeal, the parties have reversed their positions. The appellee would prefer that the assets be valued at the higher level to decrease the difference between the appellee's and the appellant's share of the community estate. The appellant for the same reason seeks a value to be placed upon the washateria business at the lower figure of $5,000. It is admitted by the appellant that points 14 and 15 are of little importance in this appeal. We find points of error 14 and 15 are immaterial; they are overruled.

## COLLEGIATE SERVICES CORPORATION STOCK

Prior to the marriage, the appellee owned 800 shares of Student Housing, Inc., a corporation engaged in providing off-campus housing for students at various colleges and universities. On February 6, 1969, Student Housing, Inc. merged with two other corporations to form Collegiate Services Corporation. As a result of that merger the appellee became the owner of 14,152 shares of Collegiate Services Corporation stock. A year after the merger, the parties acquired an additional 40 shares of stock in CSC.

At the time of the merger, the owners of Student Housing, Inc. contributed its assets and $200,000 in order to participate equally in the merger. The $200,000 was paid to Student Housing, Inc. to discharge certain obligations. This payment stabilized the debt structure of Student Housing, Inc. at the time of the merger. The CSC stock was issued to Mr. Horlock in exchange for his stock in Student Housing, Inc.

During the trial and on appeal the appellant attempted to demonstrate that the appellee's shares of CSC stock, presumed to be community property of the parties, were in fact the separate property of the appellee. The appellant further attempted to show that if the CSC stock was the appellee's separate property the community estate was entitled to a reimbursement of $100,000 for funds spent to maintain the appellee's interest in CSC. The trial court found that the appellee contributed separate and community funds of approximately $60,000 to maintain this investment prior to the merger of CSC and Student Housing, Inc. After the merger, the appellee made additional contributions of approximately $40,000 toward preserving the CSC investment. The court's division of the community property awarded one-half of the CSC stock to the appellant and one-half of the CSC stock to the appellee. However, it was ordered that only the appellee would be liable for the outstanding obligations accruing with the ownership of the CSC stock. In the event CSC calls upon its shareholders for additional contributions, the appellant may pass the cash call and thereby forfeit her stock in CSC to the appellee, or, the appellant may pay the cash call outright or upon terms specified in the judgment and retain her stock position in CSC.

The trial court made no specific findings as to the separate or community nature of

the shares of CSC stock. However, the trial court in its conclusions of law enumerated those properties found to be the separate property of the appellee and did not include the CSC stock. From that conclusion of law it may be inferred that the trial court determined that the CSC stock was the community property of the parties. The appellant's position is that the CSC stock was the separate property of the appellee. Therefore, the appellant argues that the appellee owed the community estate a reimbursement of $100,000 for community funds spent to benefit the appellee's separate property, the CSC stock.

The question presented is whether the appellant sustained her burden of overcoming the presumption that the CSC stock was the community property of the parties. There is no question that the original block of 14,152 shares of CSC stock was acquired by Mr. Horlock as a result of the merger of Student Housing, Inc. with the two other corporations. The shares of stock held by the appellee in Student Housing, Inc. were his separate property because he owned them prior to this marriage. Mutations and changes in the character of property do not affect the property's nature as separate or community, where it can be definitely traced and identified by clear and satisfactory proof. Speer, *Marital Rights in Texas* § 389 (4th Edition) (1961).

The evidence clearly establishes that the 14,152 shares of CSC stock acquired as a result of the merger were a part of the appellee's separate property. The additional 40 shares of CSC stock acquired by the parties on May 31, 1970 are presumed to be community property rather than separate property of the appellee.

In the additional findings of fact, the trial court determined that separate and community funds in the approximate amount of $100,000 had been spent on the maintenance of the CSC investment. However, the trial court refused to make a determination of the amount of reimbursement due to the community estate by virtue of its contribution to the maintenance of the CSC investment. Because we find that, as a matter of law, the original 14,152 shares of CSC stock were the separate property of the appellee, the community estate is entitled to reimbursement from the separate estate of the appellee for that portion of the community estate expended on the maintenance of the CSC investment. It is the appellant's burden to establish the right of equitable reimbursement of the community estate from the separate estate of the appellee. The appellant is aided in meeting her burden by the presumption that assets purchased and money spent during marriage are community rather than separate property. *Hartman v. Hartman*, 253 S.W.2d 480 (Tex.Civ.App.—Austin 1952, no writ). The trial court's failure to determine that the 14,152 shares of CSC stock were a part of the separate estate of the appellee is error. Based upon the presumptions favoring the position of the appellant, the community estate is entitled to a reimbursement from the separate estate of the appellee in the sum of $100,000 expended during the period of the marriage. The $100,000 to be reimbursed to the community estate shall be divided $50,000 to the appellant and $50,000 to the appellee. Appellant's points of error number 5, 6 and 7 are sustained.

Texas Family Code § 3.63 provides that in a decree of divorce the court shall order a division of the parties' estate in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. The division of the property need not be equal if the circumstances will justify awarding more than one-half to one spouse. The court's power extends to separate as well as community property. A variety of factors may justify an unequal division. Here, the court could consider the fact that the husband owned assets with a net worth of over $1,000,000 at the time of the marriage and that the assets were utilized in developing the community estate.

The right of reimbursement is an equitable right. It may be considered by

the trial court in the division of the properties of the parties. The generous provisions made for the support of the parties' son is an additional equitable consideration which may be considered in the division of the parties' properties. The debt structure of the assets of the parties and the necessity of the renegotiation of numerous short term debts by the husband, as well as the extensive contingent liability imposed upon the husband, are equities to be considered by the trial court in dividing the parties' properties. In exercising its equitable powers, the court may consider the fact that the parties' estate primarily consists of equitable interests in real property, much of which is unimproved, and the fact that the prevailing economic conditions constitute a threat to the community estate as an entirety. Upon reviewing the record in this case, we conclude that the court's property division is just and right.

The judgment of the trial court is modified to require the appellee to reimburse $100,000 to the community estate for advances used to maintain the CSC investment. Such reimbursement shall be paid $50,000 to the appellant and $50,000 to the appellee. In all other respects the judgment of the trial court is affirmed.