Opinion issued February 17, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00656-CV

———————————

Nathan Goff Corrick, Appellant

V.

Melinda
Lynne Corrick,
Appellee



 



 

On Appeal from the 300th District Court

Brazoria County, Texas



Trial Court Case No. 49076

 



 

MEMORANDUM OPINION

          This
is an appeal of a property division in a divorce case.  In two issues, appellant Nathan Goff Corrick
contends that the trial court abused its discretion in dividing the community
estate and ordering Nathan to make installment payments “as alimony” to
effectuate a 55%–45% property division in favor of appellee Melinda Lynne
Corrick.  In particular, Nathan argues
that the trial court’s decision to deduct an approximately $80,000 projected tax
liability from Melinda’s share of the community estate was unsupported by the
evidence, as was the trial court’s decision to order him to make installment
payments “as alimony” to equalize the property division.

          The
record does not support including a contingent tax liability as part of the
division of the community estate.  We
therefore reverse the portions of the divorce decree pertaining to the trial
court’s division of the community estate, including the court-ordered installment
payments, and we remand for further proceedings regarding division of the
community estate.

I.                 
Background

Melinda and Nathan divorced after
27 years of marriage.  At the time of
their divorce, they had no minor children. 
After the separation, Melinda moved in with her elderly and infirm parents.  She had primarily been a homemaker for the
duration of the marriage, working only occasionally throughout the marriage to
supplement the family’s income.  She had
medical problems that impacted her physical and mental health.  She testified that she had chronic back and
neck pain, that she had undergone surgery for her medical conditions, that she
required daily pain medication, and that she suffered from depression.  She had a high-school education, and she
testified that she was unable to get a job. 
She testified that she had only approximately $400 or $500 remaining
from the money she withdrew from the couple’s joint checking account before
they separated.  Although Melinda
repeatedly testified that she had no money, she also repeatedly said that she
wanted to buy a house near her parents’ home.

On cross-examination, Melinda was
asked if she would rather take a lump-sum settlement from Nathan’s pension plan
or receive the money when he retires. 
She testified that she did not know and that she would like to discuss
the matter with her attorney.  She was
not asked if she would prefer a lump-sum payment from Nathan’s retirement
savings account.  She did not offer any
testimony or evidence regarding whether she intended to take her share of the
retirement savings account in a single distribution.

Nathan worked as a nuclear
operations specialist.  He had worked for
his employer for 21 years and intended to continue to work there.  Nathan earned a base salary of approximately
$90,000, and with his bonuses he earned in excess of $100,000 per year.  Nathan conceded that it would be financially
difficult for Melinda to establish her own household, and he testified that he
thought a lump-sum settlement would be in her best interest.

The largest community assets, as
valued by the court, were Nathan’s retirement savings account (worth
approximately $267,000), the marital home (worth approximately $133,000), and
Nathan’s pension plan (worth approximately $75,000).  Both Nathan and Melinda proposed awarding her
the larger share of the retirement savings account.  There was no specific testimony or evidence
about tax consequences of dividing the community estate or any potential tax
liability on a distribution from the retirement savings account; however,
Nathan acknowledged generally that Melinda would be liable for taxes upon
withdrawal.

The trial court granted the divorce
on grounds of insupportability.  The
trial court awarded the house to Nathan, divided the pension plan equally, and
divided the retirement savings account, awarding $23,956 to Nathan and $243,138
to Melinda.  In addition, in its
inventory the trial court reduced the value of property awarded to Melinda by $80,235,
reflecting the court’s calculation of the tax liability that would be incurred
upon Melinda’s withdrawal of her share of the retirement savings account, based
on a 33% tax rate applied to the entire amount. 
Finally, under a subheading entitled, “Additional Orders for Property
Division,” the trial court ordered that Nathan pay Melinda a total of $23,753,
for 15.8 months at $1,500 per month, “as alimony.”

          The
trial court filed findings of fact and conclusions of law, which were listed in
the following categories: (1) Findings of Fact—Divorce; (2) Findings of
Fact—Division of the Marital Estate; (3) Division of the Marital Estate—Factors
Considered in Just and Right Division; (4) Findings of Fact as Conclusions of
Law; (5) Conclusions of Law—Divorce; and (6) Conclusions of Law—Division of
Marital Estate.  As to division of the community
estate, the trial court found that Melinda had not been gainfully employed for
over 10 years, had medical problems that prevented her from working, was in
poor physical and mental health, had only a high school education, had no immediate
prospects for employment, and had no skills or education—other than a high
school diploma—that would facilitate gainful employment.  The trial court found that Nathan earned more
than $100,000 per year, was currently employed, and continued to accrue
retirement benefits.  The trial court
considered the following factors in determining that a just and right division
of the marital estate should disproportionately favor Melinda: 

(1)   Melinda . . . would have
received ongoing benefits from the continuation of the marriage;

 

(2)   There is a disparity of
earning power of the spouses and their ability to support themselves, such that
Nathan . . . is significantly more able to support himself after the divorce of
the parties;

 

(3)   The health issues of the
parties support a disproportionate award of the community estate in favor of
[Melinda]; 

 

(4)   The education and future
employability of the parties supports a disproportionate award of the community
estate in favor of [Melinda]; and

 

(5)   The disparity of earning
power, business opportunities, capacities, and abilities of the parties
supports a disproportionate award of the community estate in favor of
[Melinda].

Nothing in the divorce decree, the trial court’s
statements in open court, or the findings of fact and conclusions of law
mentions spousal maintenance.  Nathan
requested additional findings of fact pertaining to spousal maintenance and the
valuation of the contingent tax liability that the trial court credited to
Melinda.  The trial court declined to
file any additional findings of fact or conclusions of law.

In two issues, Nathan contends that
the trial court abused its discretion in ordering alimony and in dividing the
property of the martial estate because the evidence was legally and factually
insufficient to support its findings.

II.              
Standard of review

An appellate court reviews for
abuse of discretion a trial court’s division of community property of the
marital estate.  Dunn v. Dunn, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.]
2005, pet. denied) (spousal maintenance); Alsenz
v. Alsenz, 101 S.W.3d 648, 654–55 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied) (division of property).  A court
of appeals presumes that the trial court properly exercised its discretion, Murff v. Murff, 615 S.W.2d 696, 699
(Tex. 1981), and will find an abuse of discretion only if the trial court has
acted arbitrarily, unreasonably, without reference to any guiding rules and
principles, or without sufficient supporting evidence.  Bocquet
v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985);
Raymond v. Raymond, 190 S.W.3d 77, 83
(Tex. App.—Houston [1st Dist.] 2005, no pet.). 

In an appeal from a bench trial, the
court of appeals reviews de novo a trial court’s conclusions of law and will
uphold them on appeal if the judgment can be sustained on any legal theory
supported by the evidence.  BMC Software Belg., N.V. v. Marchand, 83
S.W.3d 789, 794 (Tex. 2002); Hailey v.
Hailey, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no
pet.).  However, when, as here, the
appellate record includes the reporter’s record, the trial court’s factual
findings, whether express or implied, are not conclusive and may be challenged
for sufficiency of the evidence supporting them.  Tucker
v. Tucker, 908 S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied).  Therefore, under the abuse-of-discretion
standard of review, legal and factual sufficiency of the evidence are not
independent grounds for asserting error: they are relevant factors in assessing
whether the trial court abused its discretion. 
Dunn, 177 S.W.3d at 396.  Because of the overlap between the
abuse-of-discretion and sufficiency-of-the-evidence standards of review, this court
engages in a two-pronged inquiry to determine whether the trial court (1) had
sufficient information on which to exercise its discretion and (2) erred in its
application of that discretion.  Stamper v. Knox, 254 S.W.3d 537, 542
(Tex. App.—Houston [1st Dist.] 2008, no pet.).

With regard to the question of
whether the trial court had sufficient information, we utilize the traditional
sufficiency review.  See id.  When conducting a
legal-sufficiency review, the court determines whether the evidence would
enable reasonable people to reach the judgment being reviewed.  City of
Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  The court of appeals considers favorable
evidence if a reasonable fact finder could and disregards contrary evidence
unless a reasonable fact finder could not.  Id.  When conducting a factual-sufficiency review, the
appellate court considers and weighs all the evidence that was before the trial
court.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Raymond, 190 S.W.3d at 80.  We may not, however, merely substitute our
judgment for that of the fact finder.  Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003).  “If the
division of marital property lacks sufficient evidence in the record to support
it, then the trial court’s division is an abuse of discretion.”  Raymond,
190 S.W.3d at 83.

With regard to whether the trial
court erred in its application of discretion, the appellate court determines
whether, based on the evidence, the trial court made a reasonable decision.  Stamper,
254 S.W.3d at 542 (citing Zeifman,
212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied).  “Once reversible error affecting the ‘just
and right’ division of the community estate is found, the court of appeals must
remand the entire community estate for a new division.”  See
Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985).

III.          
Division of the community estate

In a decree of divorce, the court
shall order a division of the community estate in a manner that the court deems
just and right, having due regard for the rights of each party.  Tex.
Fam. Code Ann. § 7.001 (West 2006); Rafferty
v. Finstad, 903 S.W.2d 374, 376 (Tex. App.—Houston [1st Dist.] 1995, writ
denied). Trial courts have wide latitude and discretion in dividing community
property. Schlueter v. Schlueter, 975
S.W.2d 584, 589 (Tex. 1998).  A “just and
right” division does not require a trial court to divide the marital estate
into equal shares.  Murff, 615 S.W.2d at 698–99 & n.1 (recognizing that community
property need not be equally divided).  When
dividing community property, the trial court may consider many factors,
including each party’s earning capacity, abilities, education, business
opportunities, physical health, financial condition, age, and size of separate
estates, as well as any future needs for support, expected inheritance, custody
of any children, reimbursements, gifts to a spouse during marriage, fault in
the breakup of the marriage, length of the marriage, attorney’s fees, and a
spouse’s dissipation of the estate.  See Murff, 615 S.W.2d at 699; Hailey, 176 S.W.3d at 380; Alsenz, 101 S.W.3d at 655.  With respect to tax consequences, the Family
Code specifically provides that “[i]n ordering the division of the estate . . .
the court may consider: (1) whether a specific asset will be subject to
taxation; and (2) if the asset will be subject to taxation, when the tax
will be required to be paid.”  Tex. Fam. Code Ann. § 7.008 (West
2006).

Prior to the 2005 enactment of Family Code section 7.008,
some caselaw suggested that a trial court would err by considering future tax
liability in the just and right division of a community estate, particularly to
the extent such a determination rested upon “speculation or surmise.”  E.g., Grossnickle v. Grossnickle, 935 S.W.2d 830, 847–48 (Tex. App.—Texarkana
1996, writ denied); Harris v. Holland,
867 S.W.2d 86, 88 (Tex. App.—Texarkana 1993, no writ).  Regardless of whether these cases would have
been decided differently after enactment of section 7.008, we note that
the Family Code now specifically authorizes a trial court’s consideration of
future tax liability.  Tex. Fam. Code Ann. § 7.008(2).  The problem here is not that the liability considered
by the trial court was contingent on future events; rather, it is that there
was insufficient evidence to support the trial court’s conclusions that the tax
would be incurred and the amount of tax at issue.  Notably in this regard, the trial court’s
judgment assumes that the entire amount of Melinda’s share of the retirement
savings account would be taxed at a rate of 33%.  Federal income tax rates are progressive and
impose higher rates of taxation on marginally higher amounts of income.  See
26 U.S.C. § 1 (federal income tax rates). 
Nothing in the record supports a conclusion that Melinda anticipated
enough other income for her effective average rate of taxation to be 33%.  See
id.

In his
second issue, Nathan contends that the trial court did not divide the property
in a just and right manner because, among other alleged errors, the trial court
sua sponte accounted for a tax liability of approximately $80,000 on Melinda’s
share of the retirement savings account, despite the lack of evidence of such a
liability.  Melinda did not testify as to
any plans to liquidate her share of the retirement savings account; she did not
testify about the amount she might withdraw or the timing of such a
withdrawal.  These factors would be essential
to the determination of any resulting tax liability.  She did testify about her desire to buy a
house, and her apparent lack of other assets with which to do so may have led
the court to infer that she intended to liquidate her share of the retirement
savings account.  The only evidence
adduced at trial regarding any tax consequences of such a withdrawal from the retirement
savings account came from Nathan, who agreed that Melinda would be required to
pay taxes on a withdrawal.  But because
Melinda’s contingent tax liability depends on the amount and timing of the
withdrawal, the trial court had no evidence upon which to base its assessment
of Melinda’s liability.  Because of this
disposition, we need not resolve whether the trial court erred in its
calculation, including the question of whether the trial court took appropriate
judicial notice of prevailing rates of taxation.

Melinda contends in her surreply
brief that she can likely remedy this absence of proof with minimal additional
proceedings on remand.  And that may be
so.  We note, however, that an award of
anticipated tax liability is not the only means of addressing problems arising
from the division of illiquid assets. 
The trial court can fashion a decree that is conditioned upon future
events which may trigger a tax liability. 
See, e.g., Robbins
v. Robbins, 601 S.W.2d 90,
92 (Tex. App.—Houston [1st Dist.] 1980, no writ) (finding no abuse of
discretion when husband ordered to hold wife harmless with respect to
percentage of future capital-gains-tax liability for sale of house).  Moreover, a trial court may also
consider the liquidity of assets in the estate when making its just-and-right
division.  See, e.g., Alsenz, 101
S.W.3d at 655 (considering illiquidity of estate’s assets as factor justifying
disproportionate award of community assets); Smith v. Smith, 836 S.W.2d 688, 693 (Tex. App.—Houston [1st Dist.]
1992, no writ) (“a trial court’s failure to award sufficient liquid assets to
one spouse could constitute an abuse of discretion in certain circumstances”); see also Young v. Young, 609 S.W.2d 758,
760 (Tex. 1980) (approving language relying upon liquidity of assets as valid
consideration quoted from McKnight v.
McKnight, 535 S.W.2d 658 (Tex. Civ. App.—El Paso), rev’d on other grounds, 543 S.W.2d 863 (Tex. 1976), and Horlock v. Horlock, 533 S.W.2d 52, 61
(Tex. Civ. App.—Houston [14th Dist.] 1975, writ dism’d w.o.j.)).

          Melinda
argues that Nathan did not object to the trial court’s inclusion of the tax
liability at the trial court and that his appellate complaint is limited to the
lack of evidence of the applicable tax rate. 
We disagree with both of these contentions.  Although Nathan did not object at the time
the trial court announced its decision, he did include complaints about the
lack of evidence to support the tax liability in his motion for new trial.  In addition, on appeal Nathan specifically
argues that there was “absolutely no evidence that Melinda would withdraw the
entirety of any award to her,” that there was no evidence of the applicable tax
rate, and that there was no evidence of the tax liability.

          We
conclude that there was no evidence upon which the trial court could have based
its assessment of tax liability on a withdrawal from the retirement savings
account.  For this reason, we sustain
Nathan’s second issue.

IV.          
Spousal maintenance

In his first issue, Nathan argues
that the trial court abused its discretion by awarding spousal maintenance
because there was insufficient evidence to support such an award and because,
as a matter of law, a trial court abuses its discretion by awarding maintenance
in lieu of an interest in community property. 
Melinda, in response, argues that the evidence was sufficient to support
the trial court’s award of spousal maintenance, though she does not dispute the
legal proposition that an award of spousal maintenance to equalize a marital
property division is improper.  See O’Carolan v. Hopper, 71 S.W.3d 529,
533–34 (Tex. App.—Austin 2002, no pet.).  Although both parties have briefed this issue
as pertaining to spousal maintenance, the first question to be answered here is
not whether the trial court abused its discretion in awarding spousal
maintenance, but whether the trial court actually awarded spousal maintenance.  This inquiry requires us to construe the
divorce decree.

We interpret the language of a
divorce decree as we do other judgments of courts.  Hagen
v. Hagen, 282 S.W.3d 899, 901 (Tex. 2009) (citing Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003)).  We construe the decree as a whole to
harmonize and give effect to the entire decree. 
Id.; see Constance v. Constance, 544 S.W.2d 659, 660 (Tex. 1976).  If the decree is unambiguous, the appellate court
must adhere to the literal language used.  Hagen,
282 S.W.3d at 901.  If the decree is ambiguous, it is interpreted
by reviewing both the decree as a whole and the record.  Id.  Whether a divorce decree is ambiguous is a
question of law.  Id. at 901–02.

Although the parties have briefed
this issue as one involving spousal maintenance, nothing in the divorce decree,
the trial court’s statements in open court, or the findings of fact and
conclusions of law mention spousal maintenance. 
The trial court did not file any additional findings of fact or
conclusions of law in response to Nathan’s request on the issue of spousal
maintenance.  There is no reference to
Chapter 8 of the Family Code, which governs awards of spousal maintenance, in
the divorce decree, the findings of fact and conclusions of law, or the trial
court’s statements when announcing its judgment to the parties in open court.  See Tex. Fam. Code Ann. §§ 8.001–.305 (West
2006).  Rather, the trial court called
the order requiring Nathan to make periodic cash payments to Melinda,
“Additional Orders for Property Division.” 
In addition, the sum of $23,753 was calculated based on the trial
court’s division of the parties’ community property, not in reference to the
parties’ resources and needs.  See Tex.
Fam. Code Ann. § 8.052 (West 2006).

We decline to read the word
“alimony” in isolation and construe the trial court’s award as an award of
spousal maintenance.  See Hagen, 282 S.W.3d at 901.  Rather, construing the divorce decree as a
whole, we conclude that the trial court’s award of periodic cash payments was
in the nature of installment payments to equalize the division of the community
property to the 55%–45% division the trial court sought to achieve.  See,
e.g., Stubbe v. Stubbe, 733
S.W.2d 132, 133 (Tex. 1987) (“Court ordered alimony, available in most other
jurisdictions, is not available in Texas as it contravenes Texas public
policy.”).  Because we conclude that the trial
court did not award spousal maintenance, we offer no opinion on whether spousal
maintenance would be proper in this case.

Having held that the trial court
committed reversible error in dividing the community estate, we must reverse
and remand for a new division of the community estate.  See
Jacobs, 687 S.W.2d at 733.  Having concluded that the trial court’s award
of periodic cash payments was part of the division of the community estate, we
need not rule on Nathan’s first issue, whether the trial court’s award of periodic
payments “as alimony” was supported by sufficient evidence.

CONCLUSION

We reverse the portions of the
divorce decree pertaining to the trial court’s division of the community
estate, and we remand for further proceedings regarding division of the
community estate.

 

 

                                                                   

                                                                   Michael
Massengale

                                                                   Justice

 

Panel
consists of Justices Keyes, Sharp, and Massengale.